## McALEER *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 108. Argued November 23, 1893.—Decided December 4, 1893.

An employé in the Treasury Department, having obtained letters patent for an invention which proved to be of use in the department, executed an indenture to the department in which he said: "For the sum of one dollar and other valuable consideration to me paid by the said department, I do hereby grant and license the said United States Treasury Department and its bureaus the right to make and use machines containing the improvements claimed in said letters patent to the full end of the term for which said letters patent are granted." *Held,* that this instrument constituted a contract fully executed on both sides, which gave the right to the Treasury Department, without liability for remuneration thereafter, to make and use the machines containing the patented improvements to the end of the term for which the letters were granted; which contract could not be defeated, contradicted, or varied, by proof of a collateral parol agreement inconsistent with its terms.

THIS was an appeal from a judgment of the Court of Claims, rendered March 31, 1890, dismissing the petition of one Philip

McAleer, whose administratrix was substituted in this court. The petition was filed November 27, 1888, "to. recover from the United States compensation for the use by the United States of certain inventions made by the petitioner and protected by letters patent of the United States issued to him, such use being under licenses to the United States executed by petitioner." The several inventions and improvements for which letters patent were issued to petitioner were set out, and it was averred that "knowing that the said inventions and improvements so as aforesaid secured to the petitioner by letters patent were mainly and almost exclusively useful to the United States in the said Bureau of Engraving and Printing, the petitioner, at the request and by the advice of George B. McCartee, Esq., then superintendent of said bureau, for the United States executed and 'delivered to the said McCartee a license to the United States to use the petitioner's inventions aforesaid mentioned in letters patent No. 170,183, which was accepted by said McCartee for the United States, and under said license the United States continued thereafter to use said inventions." The license was then set out, and similar licenses were alleged to have been executed and delivered for the use by the United States of other inventions and improvements. The petition also averred that the United States advanced about the sum of two hundred dollars to be expended in procuring the issue of letters patent, "the officers of said bureau having urged the petitioner to have his aforesaid inventions and improvements protected by letters patent, with the view of securing to the United States, in the said Bureau of Engraving and Printing, by licenses as aforesaid, the exclusive use of the said inventions and improvements;" that at the time of the issue of the letters patent and of the execution of the licenses it was agreed between petitioner and the superintendent of the bureau in behalf of the United States that petitioner should be retained and employed in the bureau as machinist as long as the bureau continued to use said inventions or improvements, or any of them under the licenses; and that he was subsequently discharged. The petition further stated: "That under the aforesaid licenses there was an

implied agreement between the United States and the petitioner that the United States should pay to the petitioner for the use of said improvements and inventions whatever the said use was reasonably worth, and the petitioner upon information and belief says that the said use was reasonably worth the sum of thirty-one thousand dollars ($31,000)."

The defendant pleaded the statute of limitations, the assignment for valuable consideration of the patented improvements, and want of novelty.

The case having been heard, the Court of Claims, upon the evidence, filed the following findings of fact and conclusion of law:

"1. Plaintiff is a citizen of the United States, a resident of the city of Washington, and a machinist by occupation.

"2. From the year 1864 until about the 16th day of February, 1876, plaintiff was employed as a mechanic in the Bureau of Engraving and Printing, formerly designated the currency division of the Treasury Department. His duties were those of a skilled mechanic, and during the greatest part of the time particularly related to the charge and repair of machines used in that bureau for cutting and trimming fractional currency, including machines of the character hereinafter mentioned.

"During eleven months, beginning in November, 1876, and ending about September 10, 1877, he was employed in said bureau and paid as a watchman. At the latter date he was discharged.

"3. December 7, 1875, letters patent No. 170,873, were issued to plaintiff for improvement in paper-perforating machines.

"4. Of the perforating machines described in the specifications accompanying letters patent 170,873, thirteen have been made for the use of the Bureau of Engraving and Printing, and that number of machines are now in use there, as are some 'pin machines.'

"5. The difference in operation between the plaintiff's invention for paper perforating and the machine known as the 'pin machine,' which it was designed to supersede, is in many

respects in favor of the former. The speed of the former is greater than the latter; it will perforate more sheets per diem; the cost of constructing the knives is less than that of constructing the pins; the knife machine requires less repair than the pin machine. The pin machine does not punch entirely through the paper, but leaves a burr at the back, while the knife machine makes a clean cut, leaving no burr. This is the principal advantage of the knife machine and is a material one.

" 6. Except as hereinafter found (see finding 9) plaintiff has received no compensation from the government for the use of his invention.

" 7. January 10, 1876, plaintiff executed the instrument set forth at the close of this finding, which was recorded in the Patent Office, (Liber C 20, p. 40,) January 17, 1876.

" This assignment was made at the suggestion of George B. McCartee, then chief of the Bureau of Engraving and Printing.

" It was contemporaneously agreed by and between plaintiff and said McCartee that the assignment should hold good only during plaintiff's employment in said Bureau of Engraving and Printing, and not longer. Plaintiff was discharged from government service without fault on his part September, 1877, and his efforts to be restored have been fruitless.

" Plaintiff's request to have the machines in question stamped with his name as patentee was refused by the chief of the Bureau of Engraving and Printing.

" Whereas I, Philip McAleer, of Washington, D. C., have invented certain improvements in paper-perforating machines, for which letters patent of the United States were granted to me and bear date December 7, 1875;

" And whereas the United States Treasury Department is desirous of acquiring the right to use said invention as fully described in said letters patent:

" Now this indenture witnesseth, that for the sum of one dollar and other valuable consideration to me paid by the said department, I do hereby grant and license the said United

States Treasury Department and its bureaus the right to make and use machines containing the improvements. claimed in said letters patent to the full end of the term for which said letters patent are granted.

"Witness my hand and seal this 10th day of December, 1875.

"[L. S.]                              PHILIP McALEER.

"Recorded Jan. 17, 1876.

"8. It was no part of plaintiff's official duty to make the said invention. In making it he used government material, but this was of trifling value; he made it partly out of office hours in the office, partly out of office hours at his home, and partly at such hours as he found leisure during office hours in the office.

"The device was to be applied to machines then under his charge as a machinist; it was made entirely with government tools and machinery; he was aided by government employés; the device was not used until 1879, when plaintiff was not in government employ; before it would operate the device required mechanical changes; these were made, and the device was perfected and applied by government machinists using government tools and material.

"9. Plaintiff received from the government wages as a machinist from some time in 1864 to February, 1876, inclusive, and as a watchman from November, 1876, to September, 1877, both inclusive. The government paid the Patent Office expenses and fees incident to the issue of the patent.

"10. The following assignment was made by plaintiff:"

[Here followed an assignment by McAleer to one Schneider.]

"11. Plaintiff's invention was applied as follows, to machines in the Bureau of Printing and Engraving: The first machine was completed in April, 1879; two in August, 1879; one in October, 1879; six at divers times between December 10, 1880, and February 18, 1881; one in April, 1881; two in the spring or summer of 1884. All of these machines are not in use at the same time. Each machine can separate about 8000 sheets a day.

" 12. The following are the specifications, claims, and drawings upon which plaintiff's patents issued, and specifications; claims, and drawings upon which patents were issued at the dates shown to the persons named therein."

[Here followed plaintiff's letters patent No. 170,873, dated December 7, 1875, application filed September 14, 1875, for "improvement in paper-perforating machines." Also letters patent No. 164,920, dated June 29, 1875, application filed June 9, 1875, for "improvement in rotary paper-cutters," to Agur Judson of Newark, N. J. Also letters patent to Merriam and Norton for "improved cutting machine," No. 55,386, dated June 5, 1866. Also letters patent to Alva Worden, of Michigan for "machine for cutting leather fly-nets," No. 41,459, dated February 2, 1864.]

"Conclusion of law. Upon the foregoing facts the court find as conclusion of law that the petition be dismissed."

The opinion, by Davis, J., is reported in 25 C. Cl. 238.

*Mr. Tallmadge A. Lambert* for appellant.

*Mr. Assistant Attorney General Conrad* for appellees.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

The Court of Claims held that this case fell within the rulings made by that court in *Solomons* v. *United States*, 22 C. Cl. 335, 342, and *Davis* v. *United States*, 23 C. Cl. 329. In the first of these cases, Clark, Solomons' assignor, chief of the Bureau of Engraving and Printing, was assigned the duty of devising a stamp, and did so. There was no agreement or understanding between the officers of the government and Clark concerning the right of the government to use the invention, or the remuneration, if any, which should be paid for it, and no express license to use the invention was given by him to the government, nor any notice prohibiting its use by intimating that he would demand a royalty. The Court of Claims held "that while the government did not obtain a specific interest in the patent, nor a monopoly of the invention, nor a right to share

in the profits thereof, nor to exclude other persons from the use of it, nevertheless it acquired the right to manufacture and use the stamp in its revenue service without liability to the inventor."

In the second case, Davis was foreman of the machine and foundry division of the Ordnance Department of the Washington Navy Yard, and invented and received a patent for a vent-closing firing attachment. The cost of experiments was paid by the United States, and the patents were taken out under the advice of the chief of the Ordnance Bureau, and after they were issued the Navy Department paid him a sum of money to reimburse him for the expense incurred in securing them as a royalty for the right to their use. The Court of Claims held that he could not recover, and reiterated, as the principle announced in *Solomons' case*, "that every public officer being in some measure or degree a guardian of the public welfare, no transaction growing out of his official services or position can be allowed to enure to his personal benefit, and that from such transactions, as in the cases of guardian and ward, or trustee and *cestui que trust*, the law will not imply a contract."

It is argued that the devising of the stamp by Clark came within the scope of his official employment, and, similarly, that Davis was employed for the specific purpose of doing what in fact he accomplished in making his invention, while McAleer was not employed to invent and did not accept a royalty in satisfaction of his claims.

The case of Solomons subsequently came before this court, *Solomons* v. *United States*, 137 U. S. 342, 346, and the judgment of the Court of Claims was affirmed. Mr. Justice Brewer, delivering the opinion of the court, said : " If one is employed to devise or perfect an instrument, or a means for accomplishing a prescribed result, he cannot, after successfully accomplishing the work for which he was employed, plead title thereto as against his employer. That which he has been employed and paid to accomplish becomes, when accomplished, the property of his employer. Whatever rights as an individual he may have had in and to his

inventive powers, and that which they are able to accomplish, he has sold in advance to his employer. So, also, when one is in the employ of another in a certain line of work, and devises an improved method or instrument for doing that work, and uses the property of his employer and the services of other employés to develop and put in practicable form his invention, and explicitly assents to the use by his employer of such invention, a jury, or a court trying the facts is warranted in finding that he has so far recognized the obligations of service flowing from his employment and the benefits resulting from his use of the property, and the assistance of the co-employés of his employer, as to have given to such employer an irrevocable license to use such invention." And *M'Clurg* v. *Kingsland*, 1 How. 202, was cited as decisive.

In the case at bar, as clearly summarized by the Court of Claims, the invention was made while petitioner was in the employment of the government as a skilled mechanic, whose duty it was to secure the most efficient service from the machines in his care, to keep them in repair, and to apply such improvements as experience might suggest. While so employed he devised the improvements in question, to be applied to the machines then under his charge as a machinist; doing the work largely in office hours and entirely with government tools and machinery; and he took out the patent at the solicitation of the bureau officers, and at the expense of the government. This was in 1875; he was discharged in 1877; the device was not used until 1879, and before it worked efficiently required certain mechanical changes, which were perfected and applied by government machinists, using government tools and material. Three days after the issue of the patent he executed the assignment set forth in the findings, whereby he covenanted, "for the sum of one dollar and other valuable consideration to me (him) paid" by the United States Treasury Department, that that department and its bureaus should have "the right to make and use machines containing the improvements claimed in said letters patent to the full end of the term for which said letters

patent are granted." But it is said that there is a distinction between the right to use and the use of an invention, and that in this instance, while the right to use was absolute, the actual use was to be compensated for by the continuous employment of McAleer in accordance with a contemporaneous agreement to that effect between him and the superintendent of the bureau. We do not regard this position as tenable. The instrument constituted a contract fully executed on both sides, which gave the right to the Treasury Department, without liability for remuneration thereafter, to make and use the machines containing the patented improvement to the end of the term for which the letters were granted. It was a complete legal obligation in itself, with no uncertainty as to the object or extent of the engagement, and could not be defeated, contradicted, or varied by proof of any collateral parol agreement inconsistent with its terms. *Seitz* v. *Brewers' Refrigerating Machine Co.*, 141 U. S. 510.

The agreement that McAleer's "assignment should hold good only during plaintiff's employment in said Bureau of Engraving and Printing and not longer," was thus inconsistent and must be regarded as in defeasance and not as imposing a condition precedent to the use, the right to which had been completely granted for good and valuable consideration.

Moreover, the petition does not seek recovery for breach of any such collateral agreement, but proceeds upon an implied agreement under the licenses. We think the Court of Claims properly held that the case came within their previous rulings, which, as we have seen, were in accordance with the decisions of this court, and that the instrument executed by McAleer secured by covenant the right to use the device in the Treasury Department, which right would, under the circumstances, have otherwise been implied.

*Judgment affirmed.*