SCHMIDT v. CENTRAL FOUNDRY CO. et al.

(District Court, D. New Jersey. November 21, 1914.)

1. PATENTS (§ 210*)—INFRINGEMENT—IMPLIED LICENSE.

Complainant, when he made an invention of a pipe coupling, and at the time he applied for and obtained a patent therefor, was an officer and the active manager of defendant corporation. The greater part of the work of perfecting the device was done by employés of defendant and at its expense. Complainant also caused changes to be made in its machinery to adapt it for making the new device, and executed a contract on behalf of defendant for the manufacture of a large quantity of pipe having the patented feature, making no claim at the time for its use. *Held*, that there was an implied license to defendant to use the invention.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 301, 302; Dec. Dig. § 210.*]

2. PATENTS (§ 210*)—LICENSE TO CORPORATION—EFFECT OF APPOINTMENT OF RECEIVER.

Where a corporation had an implied license to use a patented device, such license inures to the benefit of its receiver, and protects him from the charge of infringement.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 301, 302; Dec. Dig. § 210.*]

In Equity. Suit by Charles R. Schmidt against the Central Foundry Company and Waddill Catchings, its receiver. On final hearing. Decree for defendants.

Connolly Bros., of Washington, D. C. (Thomas A. Connolly, of Washington, D. C., of counsel), for plaintiff.

Charles Neave and Clarence D. Kerr, both of New York City, for defendants.

HAIGHT, District Judge. This suit is for an alleged infringement of letters patent No. 924,840, granted to Charles R. Schmidt June 15, 1909, on application filed October 5, 1907. The defenses are non-infringement, invalidity of the patent, and an implied license.

[1] The plaintiff was vice president and operating head of the defendant company from some time prior to the year 1907 until the fall of 1909. In 1903 the company began the manufacture and sale of what is generally known as "universal pipe," under patents issued to one Dean. In the fall of 1907 and during the year 1908, several changes were made in the manner of construction, among which, and seemingly of the least practical importance, was the embodiment of the form of coupling described in the plaintiff's patent. This form, generally speaking, differed from that previously used only in the making of a recess or groove on the inside of the faucet end of the pipe, at the rear of and adjacent to the tapered portion thereof. Considerable money was expended by the company in changing and making the tools and equipment necessary to manufacture the new form. The plaintiff not only assented to the use of this form, but was very active and chiefly, if not entirely, instrumental in inducing the defend-

ant company to adopt it. In March of 1909 he executed, on behalf of the company, a contract for furnishing a large amount of pipe, with the recess form of coupling, to be used for water mains in the city of Philadelphia. Under this contract the deliveries were to begin on May 1, 1909, and to continue from time to time thereafter. They were not actually completed until 1911. The recess did not prove to be a success, and was retained, experimentally, on some sizes, for only a few weeks, while on others it was given up at various times. In the late fall of 1910 it was wholly abandoned, and a modified form, without the recess, was thereafter manufactured. On October 5, 1907, the plaintiff applied for the patent in suit, but he did not acquaint the other officers or directors of the company of his action until after the patent was issued to him, in June, 1909. In the latter part of August, 1909, his resignation was requested, because of demands which he made on the company on account of the patent, and shortly thereafter his connection with the company was severed.

In addition, it is a reasonable conclusion from the evidence that the experiments and whatever else was necessary to perfect the features covered by the patent was done at the expense of the company, and by its employés, and that whatever the plaintiff did was done in the course of his employment, while he was the operating head of the company, and in receipt of a salary from it. All of these facts are undisputed, the plaintiff not having attempted to deny them or explain the natural inferences to be drawn from them. Although he knew that the company was, by reason of his own actions, expending money to make the changes necessary to adopt the features of his patent, and was obligating itself by contract to furnish pipe embodying these features, he did not claim to have any inventive or other rights in the recess form of coupling, nor did he make any claim on the company for its use, until he had secured his patent and until he had executed the contract on behalf of the company. These facts, I think, bring the case within the principle which was the basis of the decisions of the Supreme Court in McClurg v. Kingsland, 1 How. 202, 11 L. Ed. 102, Solomons v. United States, 137 U. S. 342, 11 Sup. Ct. 88, 34 L. Ed. 667, Lane & Bodley Co. v. Locke, 150 U. S. 193, 14 Sup. Ct. 78, 37 L. Ed. 1049, McAleer v. United States, 150 U. S. 424, 14 Sup. Ct. 160, 37 L. Ed. 1130, Keyes v. Eureka Mining Co., 158 U. S. 150, 15 Sup. Ct. 772, 39 L. Ed. 929, and Gill v. United States, 160 U. S. 426, 16 Sup. Ct. 322, 40 L. Ed. 480.

This principle was thus stated by Mr. Justice Brewer in Solomons v. United States, supra, 137 U. S. at page 346, 11 Sup. Ct. at page 89, 34 L. Ed. 667:

"So, also, when one is in the employ of another in a certain line of work, and devises an improved method or instrument for doing that work, and uses the property of his employer and the services of other employés to develop and put in practicable form his invention, and explicitly assents to the use by his employer of such invention, a jury, or a court trying the facts, is warranted in finding that he has so far recognized the obligations of service flowing from his employment and the benefits resulting from his use of the property, and the assistance of the coemployés, of his employer, as to have given to such employer an irrevocable license to use such invention."

This was held in Lane & Bodley Co. v. Locke, supra, to be applicable to a case where an employé (who had not been employed for that express purpose) had invented improvements on a machine which his employer was engaged in manufacturing for sale. To the same effect is Withington-Cooley Mfg. Co. v. Kinney, 68 Fed. 500, 15 C. C. A. 531 (C. C. A. 6th Cir.). And in Gill v. United States, supra, where all the previous cases are reviewed, the principle was thus broadly stated by Mr. Justice Brown (160 U. S. at page 436, 16 Sup. Ct. at page 326, 40 L. Ed. 480):

"So, if the inventions of a patentee be made in the course of his employment, and he knowingly assents to the use of such inventions by his employer, he cannot claim compensation therefor, *especially* if his experiments have been conducted or his machines have been made at the expense of such employer."

In the latter case it was said that the principle "is really an application or outgrowth of the law of estoppel in pais"; that the ultimate fact to be proved is the estoppel, arising from the consent given by the patentee to the use of his inventions by his employer, without demand for compensation; that this may be shown by conduct on the part of the patentee proving acquiescence on his part in the use of his invention; and that the fact that the patentee made use of the property and labor of the employer in putting his conceptions into practical shape is important only as furnishing an item of evidence tending to show that he consented to and encouraged the employer in making use of his device.

Counsel for the plaintiff contends, however, that there can be an implied license only when the consent can be presumed or found to have been given before the patent has been applied for. The theory of this contention is that the principle or doctrine in question is based solely upon, or is a construction of, the provisions of section 7 of the Patent Act of March 3, 1839 (5 Stat. at Large 353, c. 88), which was later embodied, with modifications, in section 4899 of the Revised Statutes (Comp. St. 1913, § 9445). These acts provide that whoever purchases of an inventor, or with his knowledge or consent constructs, any newly invented machine, etc., *prior to the application for a patent,* shall have the right to use, and vend to others to be used, the same without liability. This theory, I think, is clearly wrong. The fallacy lies in a misconception of the decision in McClurg v. Kingsland, supra, which was the first case to announce the doctrine in question. The reference in that case to the seventh section of the act of 1839 applies to an exception which was taken to one part of the charge of the trial judge, which was entirely distinct from the part which enunciated the doctrine in question, and which was approved by the Supreme Court. This is quite evident when the whole opinion of Mr. Justice Baldwin is considered. On page 205 of 1 How. (11 L. Ed. 102) he said:

"The court left it to the jury to decide what the facts of the case were, but, if they were as testified, charged that they would fully justify the presumption of a license, a special privilege, or grant to the defendants to use the invention; that the facts amounted to 'a consent and allowance of such use,' and show such a consideration as would support an express license or grant.

or call for the presumption of one to meet the justice of the case, by exempting them from liability; having equal effect with a license, and giving the defendants a right to the continued use of the invention. The court *also* charged the jury that the facts of the case, which were not controverted, brought it within the provisions of the seventh section of the act of 1839, by the unmolested, notorious use of the invention, before the application for a patent by Harley, and that nothing had been shown by the plaintiffs to counteract the effect of this prior use."

Mr. Justice Baldwin then proceeds to examine the first part of the charge, which had to do with the presumption of a license, and held that there was no error therein. He then considered, separately, that part which dealt with the act of 1839. The only question on the latter phase of the case was as to the meaning of the words "the specific machine, manufacture, or composition of matter," contained in the act, whether they limited the provisions of the act to the "specific machine" purchased or built, or to the "invention." It is the general principle which was enunciated in the first part of the charge, and to which the first exception was taken, that has been reiterated and applied by the Supreme Court in the cases above cited. In none of them is the statute mentioned. In fact, were the doctrine based on the statute, and its application limited to cases which are within the provisions of the act, the plaintiffs, in all of those cases which came before the Supreme Court after the enactment of section 4899 of the Revised Statutes, must have recovered something. It will be noted that this section uses the words "specific thing," whereas section 7 of the act of 1839 uses the words "the specific machine, manufacture, or composition of matter." These words in the earlier statute were held, in McClurg v. Kingsland, to mean the "invention," as distinguished from the "specific" machine, etc., constructed or purchased. The section of the Revised Statutes was considered, in Wade v. Metcalf, 129 U. S. 202, 9 Sup. Ct. 271, 32 L. Ed. 661, to mean the "specific" or "actual" machine constructed or purchased, as distinguished from the "invention." In Lane & Bodley Co. v. Locke, supra, many of the machines, embracing the patented feature, were manufactured and sold after the application for letters patent had been made, yet it was held that plaintiff was not entitled to recover anything. The same applies to Solomons v. United States and Gill v. United States. In the latter case at least one machine was made after the patent was issued.

Counsel for plaintiff also refers to that part of Mr. Justice Brown's opinion, in the Gill Case, where, he, speaking of the application of the doctrine of estoppel in pais to inventors, said:

"In such case he is held to abandon his inchoate right to the exclusive use of his invention, to which a patent would have entitled him, *had it been applied for before such use.*"

He attempts to draw, from the underscored words, the conclusion that the implied license is limited to cases where it has arisen before the application for the patent. I think, however, he has placed a misconstruction upon this sentence, because it is apparent that Mr. Justice Brown was then speaking of an abandonment of a *right* to a patent, rather than *license* to use a patented article. Under the section of the statute upon which plaintiff relies, one might be entitled to a

patent, but be precluded from realizing the benefits of it as against the class of persons mentioned in that section. Having made an invention, one has an inchoate right to a patent; but he may abandon this inchoate right, and thus preclude himself from thereafter securing a patent.

It appears that certain of the pipe used in fulfilling the Philadelphia contract was manufactured for the defendant company by other concerns, and it is contended that the implied license does not, at any rate, extend to these. I cannot see any merit in this contention. This particular pipe was manufactured for the defendant company to enable it to perform and to fulfill a contract which the plaintiff himself had executed for it. Under the circumstances, there is no difference, so far as the application of the principle in question is concerned, between goods manufactured by the defendant company itself, or goods manufactured by another concern for it.

[2] On February 11, 1910, a petition in bankruptcy was filed against the defendant company, and Mr.. Catchings, the other defendant in this suit, was named as receiver. It is urged on behalf of the plaintiff that, even though there is an implied license in favor of the defendant company, it did not inure to the benefit of the receiver, and exempt him from liability for infringement. In support of this contention plaintiff relies upon Hapgood v. Hewitt, 119 U. S. 226, 7 Sup. Ct. 193, 30 L. Ed. 369. There is, however, an important and decisive distinction between the facts in that case and this. In that case the license was sought to be asserted by a corporation which claimed to have acquired it, by assignment, from the receiver of the corporation which had first secured it. The court held that it was personal and not transferable, and was extinguished with the dissolution of the first corporation. Here there was no transfer of title or interest from the corporation to the receiver. The latter was a mere custodian, carrying on the business of the corporation, pursuant to an order of the court, temporarily, in order to preserve the assets. His acts in making use of the device covered by the patent were the acts of the corporation, and he had the same right to do so that the corporation had.

In view of these conclusions, it has not been necessary for me to study with care the question of the validity of the patent; but the slight examination that I have made indicates that its validity is very doubtful.

The bill will be dismissed, with costs.