### PECK v. STANDARD PARTS CO.

(District Court, N. D. Ohio, E. D. December 27, 1920.)

#### No. 547.

Master and servant ⬤➡62—Employer held to have equitable title in patent obtained by employee.

> Where one was employed solely to develop process and machinery which eventuated in a patent to the employee, the employer had an equitable title in the patent, and not a mere license or shop right.

In Equity. Suit by William J. Peck against the Standard Parts Company. Decree for defendant.

Decree reversed 282 Fed. 443; reversed 44 Sup. Ct. 239.

William J. Peck, of Peoria, Ill., and Ed O. Peck, of Cleveland, Ohio, for plaintiff.

Tolles, Hogsett, Ginn & Morley and B. M. Kent, all of Cleveland, Ohio, for defendant.

WESTENHAVER, District Judge. This action charges infringement by defendant of United States letters patent No. 1,249,473, issued to plaintiff December 11, 1917, on an application filed March 12, 1917. Defendant, by its answer, puts in issue the charge of infringement, but on this hearing mainly relies upon a counterclaim asserting equitable title to the invention covered by that patent, and prays that plaintiff may be required to assign the legal title thereto and account for such profits as may have been made from licenses granted by him.

Plaintiff's alleged invention was made or developed by him in the performance of a contract with the Hess-Pontiac Spring & Axle Company, all the property and assets of which have since been acquired

by the defendant. This contract is dated August 23, 1915, and the material parts of it are as follows:

"That second party [plaintiff] is to devote his time to the development of a process and machinery for the production of the front spring now used on the product of the Ford Motor Company, and second party [really first party] is to pay first party [really second party] for such services the sum of $300 per month; that, should said process and machinery be finished at or before the expiration of four months from August 11, 1915, the second party is to receive a bonus of $100 per month; that, when finished, second party is to receive a bonus of $10 for each per cent. of reduction from present direct labor, as disclosed by books of first party."

Plaintiff, by reply and on this hearing, admits this contract and does not deny that the patent covers the process and machinery which was developed in performing this contract, but asserts that title to any invention made by him in developing the process and machinery under this contract belongs to him, and that the Axle Company acquired only a license or shop right, and that, inasmuch as a license or shop right thus acquired is personal to the licensee and not assignable, it was terminated by the transfer of the assets of the Axle Company to defendant.

On this hearing defendant rested its case on its counterclaim on these admissions in the pleadings. Plaintiff introduced in evidence his patent, and also testimony tending to show that, since defendant acquired the property of the Axle Company, it has made and used or sold for use certain additional machines embodying the invention covered by his patent. No claim is made that defendant has not the right to use the four machines constructed for the Axle Company, but the construction for use and sale of additional machines is said to infringe. In addition thereto, plaintiff offered other testimony, including certain correspondence exchanged between him and the Axle Company during the period of performance. This testimony tends to show that plaintiff's invention is for the process and machinery developed in performing this contract; that the plaintiff had no other employment with the Axle Company, and performed and was paid for no other duties, except as he was obliged by the written contract; that he was engaged 18 months in the development of the process and machinery under said contract, and that since his contract was performed, and his contractual relations with the Axle Company terminated, he has been paid a bonus of $660 by virtue of the last clause thereof. This evidence furnishes no aid in determining the question of ownership of the invention thus made, but does show that, prior to the filing by plaintiff of his patent application, the Axle Company had asserted that any patentable invention in the process and machinery thus developed belonged to it, and that this claim was denied by plaintiff. If the plaintiff's contention is correct, the infringement is proved, and the determination of this claim depends on the force and effect of the written contract.

Whether the invention thus developed accrued to the employer, or whether title thereto remained in the employé, and the employer obtained only a license or shop right, would seem at first glance easy to decide. An examination, however, of the decisions of the United

States Supreme' Court and of other federal cases attempting to distinguish those cases, discloses a' most confusing state of the law. A careful study of the cases persuades me that the question cannot be decided upon authority, but only by resort to fundamental principles, and that even then the question is not free from doubt.

Defendant's claim of ownership to the invention rests upon the proposition of law stated by Mr. Justice Brewer in Solomons v. U. S., 137 U. S. 342, 11 Sup. Ct. 88, 34 L. Ed. 667. At 137 U. S. 346, 11 Sup. Ct. 89, 34 L. Ed. 667, he says:

> "If one is employed to devise or perfect an instrument, or a means for accomplishing a prescribed result, he cannot, after successfully accomplishing the work for which he was employed, plead title thereto as against his employer. That which he has been employed and paid to accomplish becomes, when accomplished, the property of his employer. Whatever rights as an individual he may have had in and to his inventive powers, and that which they are able to accomplish, he has sold in advance to his employer."

This statement of the law. would seem to me to meet the lower court's findings of fact set forth as paragraph 1, and call for the conclusion that the invention belonged to the employer, the United States. Solomons, as assignee of Clark, the inventor, had, however, sued the United States to recover compensation for the use of the invention, and the defense seems to have been limited to a claim that an irrevocable license had accrued to the employer, and such had been the ground of the decision in the lower court. The Supreme Court's judgment appears to have been based on this limited ground, which, however, was all that was necessary to decide in order to dispose of the case. These considerations have led some judges to say that the statement of the law above quoted is only a dictum.

Later, in McAleer v. United States, 150 U. S. 424, 14 Sup. Ct. 160, 37 L. Ed. 1130, this statement of the law, with the sentence next following, was quoted by Mr. Chief Justice Fuller with apparent approval and without criticism. In this case, however, no claim was, or upon the facts could justly be, made by the employer to a greater right than an irrevocable license, and the case was disposed of solely on that ground. In Gill v. United States, 160 U. S. 426, 16 Sup. Ct. 322, 40 L. Ed. 480, Mr. Justice Brown, delivering the opinion, says:

> "There is no doubt whatever of the proposition, laid down in Solomons Case, that the mere fact that a person is in the employ of the government does not preclude him from making improvements in the machines with which he is connected, and obtaining patents therefor, as his individual property, and that in such case the government would have no more right to seize upon and appropriate such property than any other proprietor would have. On the other hand, it is equally clear that, if the patentee be employed to invent or devise such improvements, his patents obtained therefor belong to his employer, since in making such improvements he is merely doing what he was hired to do. Indeed, the Solomons Case might have been decided wholly upon that ground, irrespective of the question of estoppel, since the finding was that Clark had been assigned the duty of devising a stamp, and it was understood by everybody that the scheme would proceed upon the assumption that the best stamp which he could devise would be adopted and made a part of the revised scheme. In these consultations it was understood that he was acting in his official capacity as Chief of the Bureau of Engraving and Printing, but it was not understood or intimated that the stamp he was to devise would be patented or become his personal property. In

fact, he was employed and paid to do the very thing which he did, viz. to devise an improved stamp, and, having been employed for that purpose, the fruits of his inventive skill belonged as much to his employer as would the fruits of his mechanical skill."

My search discloses no later consideration of this proposition by the United States Supreme Court, nor do I find in any later Supreme Court case any criticism of it. If these statements are the law, and are not to be regarded as dicta, or the force of them frittered away by nice refinements and far-fetched distinctions, they would seem to control the decision of this case, because, for reasons presently to be stated, it seems clear that plaintiff was employed solely to invent or devise the machinery which is said to embody patentable novelty, and was paid for no other service.

However, in Pressed Steel Car Co. v. Hansen (3 C. C. A.) 137 Fed. 403, 71 C. C. A. 207, 2 L. R. A. (N. S.) 1172, the majority opinion attempts to limit and distinguish the law as thus stated, apparently because it was thought necessary so to do to bring it into harmony with their interpretation of Hapgood v. Hewitt, 119 U. S. 226, 7 Sup. Ct. 193, 30 L. Ed. 369. These grounds of distinction and limitation will appear in the majority opinion, and, it seems to me, are not based on any sound or tangible basis. The result of these efforts at distinction is merely to deny that the law is correctly laid down in the quotations above made, from the Solomons or the Gill Cases, and amounts to a refusal, in view of the Hapgood Case, to adopt and follow the law thus announced. That this is not an incorrect characterization of the majority opinion will clearly appear from the dissenting opinion of Judge Acheson.

It is indeed difficult to reconcile the Hapgood Case with the law as thus stated by Mr. Justice Brewer and Mr. Justice Brown. The facts which in the Solomons Case Mr. Justice Brown says would justify a holding that the invention belonged to the employer do not seem to be stronger or more definite than the allegations of the bill in the Hapgood Case, which on demurrer was held to amount only to a mere license or shop right. The most striking difference in the two cases is that the employé in the Solomons Case was taken from his regular employment and assigned to the specific task of developing the article which was later covered by the patent, whereas in the Hapgood Case the inventions were developed incidentally to a general and continuous employment upon a regular salary. It may be noted that Mr. Justice Brewer dissented in the Hapgood Case, and that in the Gill Case Mr. Justice Brown ignored the Hapgood Case, although reviewing fully practically every Supreme Court case bearing on this branch of the law, and reiterated the doctrine of the Solomons Case in the language above quoted only after what seems to be a full and deliberate consideration of the subject.

An examination of Rose's Notes discloses that the Hapgood Case has been cited only once on this proposition. In Dalzell v. Dueber Watch Case Co., 149 U. S. 315, 13 Sup. Ct. 886, 37 L. Ed. 749, Mr. Justice Gray, delivering the opinion, cites the Hapgood Case as holding:

"But a manufacturing corporation, which has employed a skilled workman, for a stated compensation, to take charge of its works, and to devote his time and services to devising and making improvements in articles there manufactured, is not entitled to a conveyance of patents obtained for inventions made by him while so employed, in the absence of express agreement to that effect."

The law as thus stated is amply supported by authority, and, if the Hapgood Case is to be understood as holding no more, then it is not in conflict with the law as stated in the Solomons and Gill Cases. Some expressions and cases cited, apparently with approval, in the Hapgood Case, give color to the contention that it has a broader scope, and that, if it is not limited by the later cases, it might be an authority for the proposition that, even when one is employed to devise or perfect an instrument or means for accomplishing a prescribed result, and nothing else, he still retains title to his invention, and the employer gets only a license or shop right, in the absence of an express agreement to the contrary.

Numerous cases hold that when one is employed generally by another, and part of his duties are to improve and perfect processes and machinery, any invention made in so doing belongs to the employé, in the absence of a specific agreement that the invention shall be the property of the employer. See Pressed Steel Car Co. v. Hansen (3 C. C. A.) 137 Fed., supra; cases cited in Editor's Note, 2 L. R. A. (N. S.) 1179. Barber v. National Carbon Co. (6 C. C. A.) 129 Fed. 370, 64 C. C. A. 40, 5 L. R. A. (N. S.) 1154, cited by plaintiff, turns on the construction of the defendant's plea in bar, and the specific question here presented is purposely left undecided, without any expression of opinion.

In these cases the policy of the law is declared to be to preserve to the workman as much benefit from his inventive genius as is consistent with the preservation to the employer of the use of the improvements thus made, and this is held to be fully obtained by preserving the employé's title to the invention and according to the employer a license or shop right to use it. Obviously in these situations the difficulty will always consist in determining when a specific agreement exists that the invention shall be the property of the employer. Some triers of fact will reach different conclusions from the same evidence; but these rules of law, as applied to a general employment, would seem to fail of application when one has been hired and paid for the sole and only purpose of devising or perfecting an instrument or a means for accomplishing a prescribed result.

These several cases and the different reasons have been fully weighed and considered by me. The statements of the law as made in the Solomons and Gill Cases are the latest expression of the Supreme Court on the subject. These statements cannot be repudiated, it seems to me, on the ground that they are dicta, and especially as that court has not, so far as I can discover, ever criticized or distinguished these statements in later cases. If these statements are law, and are not to be overthrown or disregarded by me on far-fetched and insubstantial grounds of distinction, then the present case is controlled by them, and the defendant is entitled to relief.

In this case plaintiff was employed for a specific purpose. He had no general employment, and performed no services, except in that one capacity. The entire consideration received by him was paid in developing the process and machinery which has eventuated in a patentable invention. He was not employed generally in a certain line of work, and devised merely an improved method or instrument for doing that work. He was employed and paid to develop a process or machinery or means of accomplishing a prescribed result. The patentable invention is the result solely of that which he was employed and paid to accomplish. The results thus accomplished, even if of a patentable nature, should accrue wholly to the employer; otherwise, the employer is deprived of a part of that for which he has paid. No invention ever would have been made, except for this contract of employment and expenditure of the employer. The employé, it seems to me, has sold in advance whatever rights as an individual he may have had in and to his inventive powers, so far as they relate to the work he was to do or the results which he accomplished. In this respect the situation differs not at all from that of an artist who is employed to paint a picture, in which situation the rule is that, when delivered and paid for, the picture, as well as all copyrights or rights of reproduction, belong exclusively to the patron. See Dielman v. White (C. C.) 102 Fed. 892.

My conclusion, upon the facts of this case, is that the property in the invention belonged to the employer, that this property passed to the defendant when it acquired all the assets of the Axle Company, and that the plaintiff holds the legal title to the patent in trust for the defendant. No evidence was introduced tending to show that plaintiff has derived any profits from licenses granted by him. A decree therefore will be entered, requiring plaintiff to assign and transfer the legal title to defendant.