**Chester R. SHOOK, Administrator of the Estate of Alfred Russell, Deceased, Appellant,**

v.

**The UNITED STATES of America, Appellee.**

No. 12724.

United States Court of Appeals Sixth Circuit.

Nov. 8, 1956.

Rehearing Denied Dec. 21, 1956.

E. S. Allen, Cincinnati, Ohio, Allen & Allen, Cincinnati, Ohio, on brief, for appellant.

Gilbert A. Horn, Dept. of Agriculture, Chicago, Ill., Hugh K. Martin, Thomas Stueve, Cincinnati, Ohio, for appellee.

Before SIMONS, Chief Judge, and ALLEN and MARTIN, Circuit Judges.

PER CURIAM.

The District Court decreed that the invention of Dr. Alfred Russell, decedent, entitled "A New Class of Polymeric Materials and Novel Processes for Producing Them," and Patent No. 2,579,759 issued on such invention were the sole and exclusive property of the United States. Decedent, from about March 21, 1947, to March 12, 1948, was employed as a research chemist at the Northern Regional Research Laboratory of the United States Department of Agriculture at Peoria, Illinois. His duties were "Under general supervision: to plan and conduct

fundamental and practical investigations on the chemical structure and properties of lignin and hemicelluloses from agricultural residues * * *." In accordance with Section 1561 of Regulations Concerning Patents of the United States Department of Agriculture then in force, Dr. Russell made several full written reports of his invention to his superiors at the laboratory and requested the patent expert at the laboratory to investigate the subject. The expert prepared a form of patent specifications on the invention, which was transmitted to the Chief of the Bureau of Agricultural and Industrial Chemistry of the United States Department of Agriculture. Dr. Russell initialed the file copy of the memorandum of transmittal, thus approving the recommendation that the patent be assigned to the Secretary of Agriculture. On June 28, 1948, Dr. Russell died and letters of administration on his estate were issued by the Probate Court of Hamilton County, Ohio. The administrator filed a patent application on the invention described above and the United States Patent Office issued the patent in question to the administrator. The United States later filed the complaint herein, demanding that the court order the administrator to assign the patent to the United States. Judgment was entered in favor of the United States.

The District Court found under the record that the invention was evolved as the direct and natural result of decedent's execution of his assigned duties in the laboratory.

Appellant's principal contention is that, in the absence of statutory provision, the United States Department of Agriculture is not authorized to require assignment of the patent in question to the United States. While no statutory authority is cited which authorizes the issuance of the Regulations Concerning Patents, they were formally drawn, presented to decedent when he assumed his duties, and he complied with their provisions repeatedly with respect to the invention in question. The Regulations, therefore, were treated by the parties as embodying conditions of employment. Decedent's acceptance of the Regulations as such is binding upon his administrator even in absence of express statutory authorization. Cf. E. F. Drew & Co., Inc., v. Reinhard, 2 Cir., 170 F.2d 679; Restatement of the Law of Agency, Section 397. When an employee is hired to devote his efforts to a particular problem, to conduct experiments for a specifically assigned purpose, and an invention results from the performance of that work, it belongs to the employer. Marshall v. Colgate-Palmolive-Peet Co., 3 Cir., 175 F.2d 215, 217; Houghton v. United States, 4 Cir., 23 F.2d 386, opinion by Judge Parker, certiorari denied 277 U.S. 592, 48 S.Ct. 528, 72 L.Ed. 1004; Solomons v. United States, 137 U.S. 342, 11 S.Ct. 88, 34 L.Ed. 667; McAleer v. United States, 150 U.S. 424, 14 S.Ct. 160, 37 L.Ed. 1130; Gill v. United States, 160 U.S. 426, 16 S.Ct. 322, 40 L.Ed. 480; Standard Parts Co. v. Peck, 264 U.S. 52, 59, 44 S.Ct. 239, 68 L.Ed. 560. In the last case the employee was hired to assist the employer in working out a certain problem and to devote his time to the development of a process and machinery for the production of a front spring for an automobile. We can see no substantial difference in the arrangement here, where decedent was employed to plan and conduct fundamental and practical investigations as described. Investigations of the subject assigned led directly to the invention in suit.

The findings of the District Court are not clearly erroneous and the judgment is affirmed.

On Petition for Rehearing

ALLEN, Circuit Judge.

Although the petition for rehearing presents questions briefly discussed in the former opinion of this court, it includes aspects of the case which we deem it proper to consider.

The Patent Manual of the Department of Agriculture, introduced in evidence by appellant's attorney, contains Department Regulations Concerning Pat-

ents, among which the following paragraph is directly pertinent here:

"If the invention involved is found to be within the specifically assigned duties of an employee he will be required to dedicate it to the public or, in the event it is desired to retain administrative control of the subject matter in the Department, such invention will be assigned to the Secretary of Agriculture. When an invention does not come within the scope of employment of the inventor-employee and where the subject matter is of interest to the Government, a patent application will be filed through the Department, under which the Government retains or obtains a shop right or right of free use and all other commercial rights remain in the inventor."

Memorandum No. 731 of the Department memoranda concerning patents was included in the Patent Manual. It contained the following provision:

"The employee-inventor, either on his own initiative or under instructions by a superior officer, shall prepare a detailed description of his invention together with an illustrative drawing, if the invention is susceptible to illustration in this manner. The purposes and operations of the invention should also be disclosed. This description will be submitted in writing to the chief of the bureau in which the inventor is employed through the immediate superior of the employee-inventor. The letter of transmittal will contain the full name and residence address of the inventor and make known his wishes concerning the disposal of the involved patent rights. If the inventor wishes to dedicate his invention to the public or assign it to the Secretary of Agriculture, he need only so state. If, however, he decides that under applicable law he is entitled to retain commercial rights, subject to a shop right in the

Government pursuant to the Act of 1928 above cited, he will so state and exercise his privilege of presenting a justification of his views. In this particular he should, of course, give a description of his work assignment as understood by him."

▮ Appellant contends that it is not shown that Dr. Russell ever saw or had a copy of the Patent Manual. The Manual was available to all laboratory employees. Under the established rule as to the effect of administrative regulations duly adopted, Dr. Russell was bound by the patent regulations of the Department of Agriculture and was presumed to be acquainted with them. Commonwealth v. Plaisted, 148 Mass. 375, 19 N.E. 224, 2 L.R.A. 142. The head of the personnel office testified that, to her best recollection, Dr. Russell, on the first day of duty, was given all material of interest to employees.

As to the part of Memorandum 731 above quoted, the steps taken, reports made, and conversations held between Dr. Russell and his superiors with reference to his invention constitute cogent evidence of his acquaintance with the memorandum. All of his actions complied specifically with the quoted paragraph. In May, 1947, Dr. Russell prepared a detailed description of the invention, together with elaborate chemical formulae. This was submitted in writing by Schiepp, Dr. Russell's immediate superior, to Lathrop, head of the Agricultural Residues Division. Conversations were then held between Cheesman, Dr. Russell and his superiors. Patent specifications were subsequently prepared by Cheesman from Dr. Russell's notes and sent to the Chief of the Bureau in Washington. Cheesman testified to the effect that Dr. Russell saw the letter of transmittal dated October 31, 1947, before it was mailed to Washington. A copy of the letter bore his initials.

Under Memorandum No. 731 if Dr. Russell had wished to retain commercial rights in his invention he should have

so stated in the letter of transmittal. Under Regulation 1561 if the invention did not come within the scope of Dr. Russell's employment he was entitled to give a description of his work assignment and to ask to retain his commercial rights. The only action he took indicates that he approved the recommendation that the patent be assigned to the Secretary of Agriculture.

Appellant renews his contention that the patent did not fall within the scope of decedent's employment and that United States v. Dubilier Condenser Corporation, 289 U.S. 178, 53 S.Ct. 554, 77 L. Ed. 1114, therefore requires reversal. This decision has no bearing here. In the Dubilier case employees of the Bureau of Standards worked upon a project not involved in the problem assigned to them on which they received no instructions and had no conversations with their superiors. Also, The Bureau of Standards had no patent regulation. United States v. Dubilier Condenser Corporation, supra, at page 208.

■ Upon the question whether the patent fell within Dr. Russell's Description of Duties we reproduce the pertinent portion thereof:

"Under general supervision: To plan and conduct fundamental and practical investigations on the chemical structure and properties of lignin and hemicelluloses from agricultural residues; to supervise the study of the properties of lignins, prepared from agricultural residues, by degradation, oxidation, hydrogenation, isolation; to conduct similar investigations of lignins resulting from the processing of residues by pulping, furfural production, saccharification etc.; to direct investigations into the separation and properties of hemicelluloses from pulping, saccharification, or other liquors; to direct the preparation of derivatives of furfural and lignin and hemicelluloses by polymeriza-

tion, hydrogenation, dehydrogenation, dehydration, etc., and studies of the properties of the derived products for commercial uses; to be responsible for the conversion of any processes developed which may have industrial promises through the pilot-plant stage; to correlate the data from these investigations and prepare reports; and to perform related duties.

The invention met with approval and encouragement from Dr. Russell's superiors. We think that it falls within the scope of the Description of Duties, which are broad, and that each and every action, study and proceeding authorized in the Description of Duties is not required to give the patent an immediate commercial usefulness.

This record shows conclusively that Dr. Russell knew for a number of months before his death that his patent application had recommended assignment of the patent to the Secretary. He knew that if the patent was entirely separate from his job assignment he was entitled to commercial protection. But he took no action.

■ It is urged that the patent application which stated that the invention might be used by the government without the payment of royalties constitutes a conclusive declaration of intent to grant only a shop right to the government. However, this statement made in conformity to 35 U.S.C. § 266, formerly Section 45, was required in order to authorize the granting of a patent without the payment of fees by a government employee. Cf. United States v. Dubilier Condenser Corporation, supra, at page 199. Also it must be read in conjunction with the recommendation in the letter of transmittal that the patent be assigned to the Secretary of Agriculture.

It follows that the judgment of the District Court was correct on the facts of this record and the petition for rehearing is denied.