## Case No. 4,582.

### EVORY et al. v. CANDEE.

[5 Ban. & A. 67.] [1]

Circuit Court, D. Connecticut. Jan., 1880.

Betts, Atterbury & Betts, for complainants.

C. F. Blake, for defendants.

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

## Case No. 4,583.

### EVORY et al. v. CANDEE.

[17 Blatchf. 200; 4 Ban. & A. 545.] [1]

Circuit Court, D. Connecticut. Oct. 6, 1879.

Frederic H. Betts, for plaintiffs.

Charles F. Blake, for defendant.

SHIPMAN, District Judge. This is a bill in equity for an account, and is brought to recover from the defendant the license fees which are claimed to be due to the plaintiffs by virtue of a written agreement between said parties, dated July 10th, 1877, whereby the defendant was licensed, upon an established royalty, to use letters patent dated November 6th, 1866, for a "double expansible gore flap," in the manufacture of boots and shoes. The plaintiffs are citizens of the states of New York and of Michigan. The defendant is a citizen of the state of Connecticut. The bill alleges, upon information and belief, a manufacture and sale by the defendant, between July 10th, 1877, and October 9th, 1878, of a large number of boots and shoes containing the invention described in the letters patent, and prays for an account of the number manufactured or sold between said dates. The license was revoked by the plaintiffs on October 9th, 1878. The agreement, which is made part of the bill, recites as follows: "Whereas, letters patent of the United States, dated the 6th day of November, 1866, numbered 59,375,

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge; reprinted in 4 Ban. & A. 545, and here republished by permission.]

were lawfully granted unto Alexander F. Evory and Alonzo Heston, for a new and useful invention, consisting of a double expansible gore flap used in the manufacture of boots and shoes; * * * and whereas L. Candee & Co., of New Haven, Conn., manufacturers of rubber boots and shoes, are desirous of acquiring the privilege and license of using said invention in the manufacture and sale of shoes." The agreement, after authorizing the licensors to revoke the license upon nonpayment of the royalty, provides, that such revocation should not impair "the effect of the admission of the validity of said letters patent or re-issue, or of the novelty, utility and practicability of the said invention." A royalty of three cents per pair on all shoes while the licensee should manufacture or sell was established. The licensee further agreed to pay at least five dollars, as a license fee, upon the first days of each quarter, "even though they should not make enough of said patented shoes to amount to that sum, at the royalty of three cents per pair."

The answer denies that the patentees were the original and first inventors of the alleged improvement, and, admitting that an agreement of July 10th, 1877, was entered into, denies that the defendant, in said agreement, admitted the validity of the patent, but avers, that, "before the said license was granted to the defendants herein, the complainant Belcher presented to these defendants a printed form of license, in which was printed an admission of the validity of the said letters patent here in suit; that these defendants had grave doubts whether said letters patent were good and valid, and refused to sign the said printed form, because of said admission, and expressly stated to the said Belcher that they did not admit the validity of the said patent, but were willing to take a license thereunder at the stated royalty of three cents per pair for all shoes made by them, which embodied the alleged invention set forth and claimed in said patent, but that they reserved unto themselves the right to deny the validity of said patent and to contest the same, and to refuse to pay said license money, and to continue to use said invention without payment of said license money, if they should thereafter conclude that said letters patent were void;" that thereafter an agreement or license was prepared, omitting the said admission, which was then, and on July 10th, 1877, executed by the defendant herein; and that the defendant has never, nor has any one for it, paid any royalties under the said alleged license, and has always refused to pay royalties under said license, on the ground of the invalidity of the petters patent; and that the license was revoked by the plaintiffs on October 9th, 1878. The answer alleges the invalidity of the patent for want of novelty and of patentable subject-matter, and that the license is void for want of consideration, and that the "defendants do not know how many, if

any, boots and shoes, containing the alleged invention, they have manufactured and sold between July 10th, 1877, and October 9th, 1878, and they refuse to ascertain and state the same."

In this state of the pleadings, the case was set for hearing upon the bill and answer, and the plaintiffs moved for a decree pursuant to the prayer of the bill, "upon the bill and answer filed herein and the annexed affidavit and the papers therein referred to," and filed an affidavit tending to show that the defendant, in its answer in another case in this court, had relied upon the validity of the licensed patent. The defendant filed counter affidavits.

The plaintiff's motion is in accordance with the comparatively recent English chancery practice which was authorized by an act of 15 & 16 Vict. and by the orders of court passed in August, 1852. 1 Daniell, Ch. Pr. 822–826. The 90th equity rule of the supreme court provides, that, in all cases where the prescribed rules do not apply, the practice of the circuit court shall be regulated by the "present" practice of the high court of chancery in England, "not as positive rules, but as furnishing just analogies to regulate the practice." That rule adopts the English practice, as it was known and understood in 1842, at the time the rule was ordained. Consequently, the practice of this court remains unaffected by the new orders, so called, which the courts of that country have since incorporated into their practice. Badger v. Badger [Case No. 717]; Goodyear v. Providence Rubber Co. [Id. 5,583]. This motion, in the form in which it was made, coupled with affidavits, does not seem to be in accordance with the practice of the federal courts, but I shall regard the hearing as a hearing upon bill and answer, without reference to the affidavit of the plaintiffs.

The question in the case is, whether the answer sets up a legal defence against the admitted facts which are alleged in the bill. "If an answer is insufficient in its responses to the charges and statements in the bill, the objections are to be taken to it by exceptions filed. If it is in substance bad as a defence, and no further proofs are required by the plaintiff, the case can be set down for hearing upon the bill and answer, and will be adjudged accordingly." Story, Eq. Pl. § 456.

Two questions are presented by the answer: (1) Is the licensee estopped, by the terms of the license, from setting up the invalidity of the patent, as a defence in an action for license fees due prior to the revocation of the license? (2) Is a parol agreement, made prior to the license, that the licensee shall be at liberty to attack the patent, to be admitted, in view of the recitals and provisions of the license, there being no allegation or claim that anything was inserted, or was omitted, in the written agreement, through fraud, mistake, or accident?

It is not necessary to consider, upon the

first point, the question whether, in an action to recover overdue license fees, the licensee is estopped from contesting the validity of the patent, by a naked license, and by an unmolested exercise of the right which the license purported to convey, for, in this case, the licensee expressly admitted the validity of the patent, in the recitals of the agreement. It is admitted that the agreement which is set out in the bill is the one which was executed by both parties. The defendant asserts in the license, that the letters patent were lawfully granted to the patentees for a new and useful invention, and has thereby tersely admitted the novelty and utility of the invention specified in the patent, and the validity of the grant to the patentees. It is not permissible to the licensee, unless the recitals were introduced by fraud, imposition, mistake, or accident, to deny their truth, in an action for license fees which accrued before the revocation of the license.

The defendant next relies upon a parol agreement, made prior to the execution of the license, whereby it reserved to itself the right to deny the validity of the patent. It appears, from the answer and from the defendant's affidavit, that a license was sent to the defendant, which contained an express admission of "the validity of said letters patent, and the novelty, utility, and practicability of the invention therein described and claimed, or that may, or can be, described and claimed in any re-issue thereof." This agreement the defendant declined to sign. The parties subsequently met, and the defendant informed the plaintiffs that it would sign a license, but reserved the right to defend on the ground that the patent was not valid, if it should so conclude, and to use the alleged invention described in the patent without royalty, if it became satisfied that the patent was void. Thereupon, the plaintiff requested the defendant to draw up a license in the form which it would sign. The license set forth in the bill was drawn by the defendant, and was signed by the parties.

The defendant suggests that the parol reservation was a valid collateral agreement, which should be enforced. It is true, that, oftentimes, a collateral parol agreement has been permitted to be proved, "which does not interfere with the terms of the written contract, though it may relate to the same subject-matter." 2 Tayl. Ev. § 1049. This parol agreement, reserving a right to use the licensed invention without royalty, if it became satisfied that the patent was void, is substantially inconsistent with the written agreement which the defendant subsequently drew, wherein it promises to pay a royalty during the unexpired term of the patent, reserves no right of revocation, twice admits the validity of the patent, and declares that a revocation by the licensors, for non-payment of royalty, shall not impair the effect of the admissions. The parol agreement is in the teeth of the subsequent written contract.

The bill avers a use of the patented invention by the licensees prior to October 9th, 1878, which, though not denied, is not admitted in the answer. Brown v. Pierce, 7 Wall. [74 U. S.] 205. But the license also provided for a quarterly payment of five dollars, although no shoes containing the patented invention had been made. The execution of the license having been admitted, it is apparent, from the pleadings, that something is due the plaintiffs. Let there be a decree for an account, in accordance with the prayer of the bill.