SHIPMAN, Circuit Judge.
The complainant is the assignee of ’letters patent No. 456,059, which were issued on July 14, 1891, to Albert D. Prentice, as inventor, for an improvement in machine for ¡•seaming tubes of sheet metal, and, as such assignee, brought a bill *907 in equity in the circuit court for the Southern district of New York against the defendant to restrain an alleged infringement of said patent. This appeal is from a decree of the circuit court, which dismissed the bill.
In April, 1891, Prentice made an application for the patent in suit, which was granted July 11, 1891. Subsequently, upon an application filed September 3, 1891, by Edward F. Greenfield, the electrical superintendent of the defendant corporation, an interference was declared between these two claimants for priority of invention, which resulted in a decision in favor of Prentice, and it may be assumed that he was the original inventor of the machine described in his patent. He had made a wooden model of his invention prior to the fall of 1888, and in November of that year Greenfield called upon him to make inquiries about it, saw it, and said that he might be able to make some arrangements for its manufacture. Prentice’s story is that about January 1, 1890, Greenfield sent for him to come to the defendant’s shop, and agreed with him that he should build one of his machines at the company’s expense, that they should have an opportunity to test the probabilities of its success, and, if the invention proved satisfactory, they were to use it, paying as royalty one-eighth of a cent per foot of tubing manufactured by its aid. He was to take out a patent in the meantime, and was to be paid a mechanic’s wages for doing a mechanic’s work. He was, in fact, paid at the rate of $30 per week, and he entered upon their employment in January, 1890, but did not commence working upon these machines until about a year afterwards. From material furnished by the defendant, six or seven machines were made by him, or under his supervision, in its shop, which went immediately into experimental or practical use by the defendant. On August 3, 1891, Prentice sent to its president the following letter:
“jNew York, Aug. 3rd, 1891.
“Mr. Edwd. H. Johnson—Sir: I called at your office, 44 Broad street, to-day, but failed to find you. I am the Inventor and patentee of machine for making hook-seam sheet-metal tubes, as now used by Interior Conduit and Insulation Oo. I have failed to come to any agreement with your agent, Mr. Greenfield, in regard to the granting license, or the amount of royalties I should receive. I therefore take this opportunity to notify you to discontinue the use of said machines until such time as we shall come to a mutual understanding as to the amount I shall receive as a royalty on your invention.
“Kespectfully yours, Albert D. Prentice, 257 West 21st St., City.
“P. S. Date of U. S. patent, July 14, 1891.”
On August 5th he was discharged by Greenfield. On August 11th Johnson replied to the letter of August 3d, denying Prentice’s right to the patented invention, and claiming that, in any event, the defendant was entitled to use it. The question of importance in the case is in regard to the right of the defendant to use the machines which were made prior to August 3d. The complainant testified that the defendant had six or seven patented machines in use when he left. He afterwards said that seven dies were made in all during his continuance with the defendant, one of which was nearly completed when he left. No machines in addition to those substantially made or supervised by the complainant, which made use *908 of his invention, have been made or have been used since the complainant’s notice of August 3d. The defendant says that it discontinued the use of the old machines after August 1, 1893, by -which it means that a new roller die was substituted in place of the die which was described in the patent, but which the complainant thinks was an immaterial change. The decision of the question turns upon the existence of the alleged contract between Prentice and the defendant. As stated by the complainant, it was a verbal contract between him and Greenfield alone, neither made in the presence of, nor, so far as appears from his testimony, within the knowledge of, any other person. The alleged facts of the contract, which Greenfield denies, must be supported by extraneous circumstances, or by the inherent probabilities of the truth of Prentice’s story, or its existence cannot be affirmatively found. The circumstances which dc not support the complainant’s theory are the following: Although Prentice says that he was employed for the very purpose of building these machines upon a specified royalty, he did not enter upon their construction until a year after he commenced to work for the defendant; but Greenfield attempted to have the first machine made outside the defendant’s shop. Prentice did not apply for a patent until after the first one, which was finished in February or March, 1891, must have been in use; and Greenfield’s knowledge that a patent had been applied for or obtained manifestly came as a surprise. Furthermore, no executive officer of the corporation seems to have heard of such a contract, which was of a class which Greenfield, who was simply the superintendent of the electrical department, had no power to make. The surrounding circumstances not only do not aid Prentice, but they cast doubt upon the probabilities of the truth of his story, and verify the accuracy of the conclusion of the trial judge, who said: “His [Prentice’s] claims are not supported by proper or adequate evidence. If there was such a contract with the defendant, it has not been proved.” The case is, therefore, that of an inventor, who, as a workman in the employ of another, manufactures for him, in his shop, and with his materials, and upon weekly wages, machines which the employer uses as a part of his tools, without knowledge of any objection thereto, and for which the inventor, during the term of his employment, obtains a patent, and thereafter seeks to restrain the employer from the use of the particular machine or machines which had been thus made in the employer’s shop under the supervision of the employé, and apparently as a part of his ordinary mechanical work. This subject was considered at length in Gill v. U. S., 160 U. S. 426, 16 Sup. Ct. 322. The court said the case raised the question, “which has been several times presented to this court, whether an employé paid by salary or wages, who devises an improved method of doing his work, using the property or labor of his employer to put his invention into practical form, and assenting to the use of such improvements by his employer, may, by taking out a patent upon such invention, recover a royalty or other compensation for such use. In a series of cases, to which fuller reference will be made hereafter, we have.held that this could not be done.” The court further said that the principle upon which all the deci *909 sions were based is “an application or outgrowth of the law of estoppel in pais.” The other' cases to which reference was made are McClurg v. Kingsland, 1 How. 202; Solomons v. U. S., 137 U. S. 342, 11 Sup. Ct. 88; Lane & Bodley Co. v. Locke, 150 U. S. 193, 14 Sup. Ct. 78; McAleer v. U. S., 150 U. S. 424, 14 Sup. Ct. 160; Keyes v. Mining Co., 158 U. S. 150, 15 Sup. Ct. 772. It is not to be expected that the facts in each case should be either exactly parallel with those of every other, or with those contained in this record, but the principle which is applicable to all is the same. The decree of the circuit court is affirmed, with costs.