HAZEN MFG. CO. v. WAREHAM.

(Circuit Court of Appeals, Sixth Circuit. May 8, 1917.)

No. 2940.

1. PATENTS ⬯283(1)—SUIT FOR INFRINGEMENT—DEFENSES—LICENSE.

By an oral agreement defendant, which was a manufacturer of kindred articles, was to furnish the material and workmen to build a structure invented by complainant for experimental purposes, and if it proved successful they were to enter into a contract respecting its manufacture. After the experimental work was done and a patent had been applied for, a written contract was made between them to continue for a year, by which defendant was to manufacture and sell the machines and pay complainant a royalty, and a commission on such as were sold by him. *Held* that, in view of such contract, defendant could not set up, in defense to a subsequent suit for infringement, that it was a part of the oral agreement that it should have an exclusive license or a shop right to manufacture under the patent during its full term.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 448–450, 452.]

⬯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. EVIDENCE ⬥442(1)—PAROL TESTIMONY TO VARY WRITING.

Where a written contract appears on its face to be comprehensive and complete, parol testimony is not admissible to prove a prior oral agreement to enlarge or vary its terms.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1882.]

3. PATENTS ⬥210—LICENSES—IMPLIED LICENSE.

An implied license or shop right under a patent rests upon conduct of the patentee which raises an estoppel in pais, and cannot be set up in the face of an express license.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 301, 302.]

Appeal from the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Suit in equity by Percy Wareham against the Hazen Manufacturing Company. Decree for complainant, and defendant appeals. Affirmed.

Wm. M. Swan, of Detroit, Mich., for appellant.

S. C. Barnes, of Detroit, Mich., for appellee.

Before WARRINGTON and DENISON, Circuit Judges, and SANFORD, District Judge.

WARRINGTON, Circuit Judge. The bill below alleges in the usual form infringement of patent No. 1,058,281, relating to improvements in waste-paper presses, issued to Percy Wareham, appellee, April 8, 1913. The original answer does not in terms deny the charge of infringement, though, after admitting that the articles manufactured by defendant embody "certain ideas and constructions which are illustrated and described" in the letters patent, the answer alleges that some of these "constructions" are "so old and well known in the art as to be public property, available to any one, while other features therein shown are properly the invention of another or others, which said Percy Wareham wrongfully appropriated and falsely claimed as his own in presenting his application for patent," and the names and addresses of four persons are set out from whom it is alleged such appropriation was made. These allegations are made the basis of a charge that "the issuance of said letters patent was wholly void." The answer is otherwise in ordinary form, and prays dismissal of the bill. Later, an amendment was made to the answer, in effect averring anticipation and invalidity of the patent in suit through references to a number of earlier patents, and, by separate paragraph, alleging further:

"That previous to, during, and after the time during which said Percy Wareham's application for said letters patent was made and pending, his relations to defendant were such that defendant was and is now entitled to the outright ownership of any letters patent for which he may have made application, or which may have been issued to him, or to an irrevocable license or shop right therein and thereunder, without cost to defendant or its privies in interest, other than the regular payments to which his contract of hiring entitled him. Wherefore, if for no other reason, though others exist, as stated, this cause is wholly without merit, and defendant prays relief accordingly as though the matters herein set up had been made the subject of a cross-bill or of a separate suit in the premises."

[1] The case was heard and disposed of under this state of pleading, upon proofs (including the letters patent) tending to support the

allegations of the bill of complaint, and also upon evidence in relation to the shop right alleged in the amendment to the answer. The defendant, however, offered no evidence in support of the allegations of its answer or the amendment thereto, except as to its alleged "irrevocable license or shop right." True, the defendant called one, and only one, of the persons named in its answer from whom it is there alleged that Wareham wrongfully appropriated "patentable structural ideas"; but the witness gave no testimony in support of the allegation, and, as will be pointed out later, defendant admitted that Wareham is the inventor of the patented device, and it also appears that defendant had been "selling balers (the device in issue) down to the date of trial, substantially like the patent in suit." The contest at the trial was thus reduced to the issue concerning the alleged "irrevocable license or shop right." Decree of perpetual injunction was entered in Wareham's favor as to claims 1, 2, 3, and 4 of the letters patent, and granting the usual accounting. The defendant company appeals.

It is said in behalf of the company that its evidence was offered "in the nature of a plea in bar under the old equity rules," and on the basis of a claimed "irrevocable shop right" in the company. This at once presents the question whether Wareham's relation to the company, and the course he pursued in respect of his invention, amounted to a consent on his part that the company should have the shop right claimed. The company had been engaged in the manufacture of paper balers and other articles since 1906. About that time Wareham at his own request became a small stockholder in the company, and its shipping clerk; his position was subsequently changed on like request to that of a traveling salesman of wooden paper balers, the only kind of balers the company was then manufacturing. This change in position involved a change in his compensation from a fixed weekly sum to a commission basis, and required him to pay his traveling expenses. While so engaged, and in February, 1912, Wareham conceived the idea of a steel paper baler. He prepared drawings showing his proposed device, and upon securing from the president of the defendant company, Mr. Hazen, and the factory superintendent, Mr. Callender, a conditional pledge of secrecy, presently to be shown, he disclosed his idea and showed his drawings to them. This resulted in the development of Wareham's plan and the construction of the baler in question. The company furnished the materials; some of its employés, particularly its tool maker, worked with Wareham and under his guidance in producing the baler; in working out Wareham's plan it was found necessary to make some changes, and to send him at the expense of the company on several trips to secure patterns and the like; yet all these things appear to have been done under a distinct arrangement made between Wareham and the company that their rights in respect of the baler, in the event of a successful result, should be made the subject of a written contract. Wareham's testimony as to the arrangement was that, when he explained his idea and showed his plans for the baler to Hazen and Callender, as before stated, it was verbally agreed:

"That they would not disclose what I showed them, or make such a baler unless under contract with me, later on. That was the only contract there was, the understanding being that the company was to furnish the material and

back the experimental work on this baler; if it proved a success, we were to have a written contract."

Hazen testified that the verbal agreement required the company to—

"stand the experimental expense of putting the baler on the market, cost of materials, the time of the best workmen in the shop at his (Wareham's) disposal or under his direction, and he on his part agreeing to give the company the exclusive sale of the invention during the life of whatever patent might be taken out on it, if it proved satisfactory. After talking with him along this line, and there were other things, we also discussed at that time the commission that Wareham should have as a salesman of these balers, and I think that we then agreed on the royalty of $1 per machine."

Wareham and Hazen were the only witnesses who testified on the subject of the verbal understanding. The baler so produced proved to be a success; and Wareham, after calling the subject of the contract to the attention of Hazen, prepared a form with Hazen's assent, and, Hazen having made some change in the draft, the instrument as thus changed was executed by the company and Wareham on June 22, 1912. A copy appears in the margin.[1] It is to be observed that Wareham and Hazen are in practical harmony, both as to the existence of an antecedent oral arrangement and its terms, except in one particular; this exception is significant. According to Wareham's recollection of the oral agreement, and according to the written contract itself, no statement is to be found giving to "the company the exclusive sale of the invention during the life of whatever patent might be taken out" on the baler;

[1] "In contract of agreement made this 22d day of June, 1912, between the Hazen Manufacturing Co., party of the first part, and Percy Wareham, party of the second part.

"Whereas, the Hazen Mfg. Co. does hereby agree to manufacture, advertise and use all possible means to place upon the market the paper press known as the Leader steel press, the invention of said Percy Wareham.

"Whereas, the Hazen Mfg. Co. also agrees to pay Percy Wareham a royalty of $1.00 each on each Leader steel press sold or disposed of in any way, except those sold or disposed of by Percy Wareham personally; the payment of royalty to begin with the allowance of the patent as hereinbefore specified, and on all steel presses afterward sold in any way except those sold by Percy Wareham personally.

"Whereas, the Hazen Mfg. Co. agree with Percy Wareham to keep an exact record of such machines sold for his inspection, and to pay said Percy Wareham a commission of $11.00 on all steel presses sold by him and to allow full commission on all sales made by the Hazen Mfg. Co. from names or leads furnished by Percy Wareham; also to construct at least six models for the use of salesmen within the next three months from dating hereon; and to pay said commission in advance on the first and the fifteenth of each month. Said Percy Wareham agreeing that, on all presses returned or not settled for and sold by him, the commissions shall be taken from the semimonthly payments, upon proof of their return being shown.

"Said Percy Wareham also agrees to make sales only to such people as in his judgment are reliable and worthy parties, and not to sell or handle any other press during the life of this contract of agreement, and to use all means and power at his command to further the sales of this machine or press.

"Signed this 22d day of June, 1912.

"In force until July 1st, 1913.          Hazen Mfg. Co., by L. R. Hazen, Pres.
                                        "Percy Wareham.
"Witness:
      "Villette Hazen.
      "Josephine Lester."

this statement appears only in Hazen's testimony as to the terms of the oral agreement. True, omission occurs in the written contract respecting the preliminary expenses incurred in reducing the Wareham invention to practice, as well as to the exclusive privilege claimed for the company; but there is a marked distinction between these omissions. Wareham and Hazen concur in recollection as to the former, while they are in conflict as to the latter. When the contract was written, the preliminary expense item was a closed transaction and could never recur. The exclusive privilege about which Hazen alone testified was to subsist throughout the life of the patent in contemplation, 17 years. Thus, if the omitted item of expense had been placed in the written contract, the provision would have been in accord with the testimony, and would not have changed the operation and effect of the instrument; but the claimed exclusive privilege cannot be considered as part of the written contract without encountering a serious conflict in the testimony or without materially altering and varying the instrument itself.

[2] The contract appears on its face to be comprehensive and complete, and the feature in question of Hazen's testimony is under well-settled rules inadmissible. McAleer v. United States, 150 U. S. 424, 432, 14 Sup. Ct. 160, 37 L. Ed. 1130; Seitz v. Brewers Refrigerating Co., 141 U. S. 510, 517, 12 Sup. Ct. 46, 35 L. Ed. 837; De Witt v. Berry, 134 U. S. 306, 315, 10 Sup. Ct. 536, 33 L. Ed. 896; Montgomery v. Ætna Life Ins. Co., 97 Fed. 913, 917, 38 C. C. A. 553 (C. C. A. 6); Evory v. Candee, 17 Blatchf. 200, 205, Fed. Cas. No. 4,583; Huntington v. Toledo, St. L. & W. R. Co., 175 Fed. 532, 537, 99 C. C. A. 154 (C. C. A. 6). Furthermore, the testimony was permitted below to take a wide range with a view of ascertaining the truth concerning the relations and dealings between Wareham and the company; and in the course of his opinion the trial judge said in respect of the oral agreement and the written contract:

"The parties operated under the oral agreement for a time. The oral agreement was reduced to writing on June 22, 1912, and that contract * * * was the agreement between the parties under which the work was done in the shop of the defendant company and materials were furnished by the defendant company, and the other things were done by the defendant company to develop this machine. It was a definite agreement and the compensation passing to each of the parties was fixed by it. I find that it was the oral agreement made by the parties, except that it was made more definite and more tangible, by being placed in writing. * * *"

With a like view the trial court admitted proofs relative to the dealings of the parties under the contract. These proofs for the most part concerned the observance, and in a number of instances charges of non-observance, of the contract by the respective parties. Here again the impressions that the witnesses made upon the court below are to be found in a statement in the opinion of the learned trial judge that he believed Mr. Wareham. The demeanor of the witnesses and their opportunities to know at first hand the facts about which they testified of course had much to do with their credibility; and it is observable that defendant's factory superintendent, who was present at the time Wareham states the oral agreement was made, was not called to testify. We feel bound to conclude that the written contract was intended to

embrace all parts of the true oral agreement, except the past and immaterial item of preliminary expense, and to express the real relations of the parties to the invention in suit. We may allude to the essential provisions of the contract. It stated that the invention was that of Wareham. The company obligated itself to manufacture, advertise, and use all possible means to place the paper presses on the market; to pay Wareham a royalty of $1 upon each press "sold or disposed of in any way, except those sold or disposed of" by him; and also to pay him a "commission of $11 on all presses sold by him * * * and on all sales made" by the company "from names or leads furnished" by Wareham. Wareham obligated himself to make sales only to such persons as in his judgment were reliable and worthy, not to sell any other presses during the life of the contract, and to use his best endeavors to promote sales of the baler. The instrument bore date June 22, 1912, and was to be "in force until July 1st, 1913."

[3] Stated otherwise: The subject-matter of the contract was Wareham's invention, and both parties undertook to promote its sale; and to this end Wareham in effect licensed the company to manufacture and sell the invented baler for a limited period only and subject to a royalty and sales commission reserved to himself. Manifestly there could be no implied license in the presence of this instrument; an express license and an implied license cannot in the nature of things coexist. As Judge Gray said, in Sanitary Mfg. Co. v. Arrott, 135 Fed. 750, 758, 68 C. C. A. 388 (C. C. A. 3) when disposing of a feature of the case kindred to the present controversy:

"No implied contract of license, arising from the circumstances under which the patent was taken out and the relations of the parties, can be set up in the face of a proved special contract of license."

The very condition under which Wareham consented to disclose his invention to the company's representatives resulted in the execution and observance of the written contract; and it plainly is not open to the company now to insist that Wareham ever consented, either impliedly or otherwise, to the gratuitous use of his invention (Talbert v. United States, 25 Ct. Cl. 141, 156); such insistence is contradictory alike of Wareham's conduct and the contract itself (McAleer v. United States, supra, 150 U. S. 424, 432, 14 Sup. Ct. 160, 37 L. Ed. 1130). Ever since McClurg v. Kingsland (1843) 1 How. (42 U. S.) 202, 11 L. Ed. 102, the rule has prevailed that an implied license such as is claimed here under the customary name of a "shop right" is to be founded upon conduct of the inventor which gives rise to an estoppel in pais; such cases must of necessity depend at last upon the intention of the parties; and such intention is of course to be ascertained in every case according to the particular facts and circumstances involved. Gill v. United States, 160 U. S. 426, 430, 16 Sup. Ct. 322, 40 L. Ed. 480; Withington-Cooley Manufg. Co. v. Kinney, 68 Fed. 500, 506, 15 C. C. A. 531 (C. C. A. 6); Blauvelt v. Interior Conduit & Insulation Co., 80 Fed. 906, 908, 26 C. C. A. 243 (C. C. A. 2); Barber v. National Carbon Co., 129 Fed. 370, 374, 64 C. C. A. 40, 5 L. R. A. (N. S.) 1154 (C. C. A. 6). These cases are but illustrative of many decisions, and it is not to be doubted that they state the settled rule.

The difficulty with the defense made in the instant case is

that it fails to show the element of consent on the part of the employé (Wareham) which is the distinguishing feature of all decisions holding the employé to be estopped; and hence the citations relied on by the learned counsel are not applicable. It is scarcely necessary to add that estoppel cannot be based upon the fact (already discussed in another connection) that the company bore the expense of reducing Wareham's invention to practice, since this, as well as Wareham's disclosure of his invention to the company, was in pursuance of a proved understanding that the rights of the parties should be fixed by a subsequent written contract; it might be conceded that in the absence of this distinct condition the company would have been entitled to an implied license, a shop right, and that a contract like the one executed should have been treated as a temporary expedient, as indeed defendant claims the present one should be, though in view of the evidence it is apparent that such a question cannot arise here. Nor is the fact important that Wareham, while engaged on the road in his capacity as a commission salesagent, overran to some extent the period fixed by the contract. At most this was the result only of mutual sufferance; the acts of the parties in that period were in observance of the contract, and it is not shown that the company was either misled or prejudiced by the overtime.

One of the assignments is to the effect that the court erred in failing to consider defendant's testimony "as in the nature of a plea in bar under the old equity rules," and in stating in the opinion that defendant would not be permitted thereafter to raise "the question of validity and infringement  *  *  *  of the patent in suit, which was expressly abstained from by defendant at the hearing." Although in pursuance of equity rule 29 (198 Fed. xxvi, 115 C. C. A. xxvi) defendant presented this defense by answer, it is not shown that any effort was made in accordance with the same rule to have this portion of the answer separately heard and disposed of before trial of the principal case. It would seem that the case was brought to trial upon all the issues. Plaintiff opened his case at the trial in the usual way, and, in view of the preliminary proofs, we think sufficiently to entitle him to relief. Defendant met the case so made by endeavoring to establish its claimed shop right, and it certainly had a full hearing upon this feature of the answer. It voluntarily refrained from offering evidence in support of the portions of its answer and amendment thereto alleging invalidity of the patent, though, as already pointed out, admission of infringement distinctly appeared.

We therefore see no sufficient reason for disturbing the decree simply because of an expression contained in the opinion that defendant would be denied a trial upon its other defense. The court perhaps had in mind the question whether defendant could split the case into as many parts as there were defenses, and try each of them separately, not only in the court of first instance, but through the appellate courts; but, whatever may have led to the expression to which the assignment of error relates, it seems certain that no application had been made to present evidence under the defense of invalidity, and hence we cannot rightfully pass upon the question.

The decree must be affirmed.