WILLIAM M. BAILEY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 22615. Promulgated October 10, 1950.

*William Wallace Booth, Esq.*, and *Sidney B. Gambill, Esq.*, for the petitioner.

*Kalman A. Goldring, Esq.*, for the respondent.

472

474

478

479

482

[black bars]

OPINION.

OPPER, *Judge:* Under the first issue petitioner contends it is entitled to deduct royalties or depreciation allowances, see *Associated Patentees, Inc.*, 4 T. C. 979, depending upon whether the transactions with Bailey under which the amounts were paid resulted in a "license" or "sale" of his plate patent.

Although in an agreement for exploitation of patents the parties call themselves "licensor" and "licensee" and the consideration "royalties," the transaction may nevertheless constitute a sale. *W. B. Davis & Son, Inc.*, 5 T. C. 1195, 1204. But "where he [the patentee] transfers less than all three rights to make, use, and vend for the term of the patent, or transfers them nonexclusively, the transfer is a mere license and does not convey any title in the patent itself." *Kimble Glass Co.*, 9 T. C. 183, 190.

In our view—and apparently respondent does not now seriously contend otherwise—none of the three agreements effective during the period in question amounted to a sale of the plate patent. Evidence of the terms of the initial oral agreement, under which the 1942 thermal valve payments were made, is not entirely satisfactory. But our conclusion that it conveyed less than the "exclusive" right to "make, use, and vend" for the term of the patent is consistent with the agreement of 1943 reducing the oral agreement to writing. As in the case of the 1936 agreement covering the mechanical valve payments, it purported to be neither exclusive nor unconditionally for the life of the patent.

Respondent contends that the payments were without consideration because petitioner owned or had "shop rights" in the patent from the start, see *Heckett Engineering, Inc.* v. *Commissioner* (CA-3), 173 Fed. (2d) 572; *Thomas Flexible Coupling Co.* v. *Commissioner* (CCA-3), 158 Fed. (2d) 828, certiorari denied, 329 U. S. 810, and that the payments were disguised dividends, see *W. N. Thornburgh Manufacturing Co.*, 17 B. T. A. 29. But the evidence is conclusive to the contrary, and in fact demonstrates substantially an inverse ratio

between stock ownership and royalties for each year.[2]  See *Louise K. Aprill*, 13 T. C. 707, 712.

This failure of any other explanation for the payments satisfactorily disposes of respondent's theory.  Even the possibility that petitioner had "shop rights" disappears, in the light of the mutual understanding, illustrated by the present instance and consistently practiced through the years, that petitioner would pay royalties of 5 per cent to employees for their inventions.  "It is scarcely necessary to add that estoppel [shop rights] cannot be based upon the fact  *  *  *  that the company [petitioner] bore the expense of reducing  *  *  *  [Bailey's] invention to practice, since this, as well as  *  *  *  [Bailey's] disclosure of his invention to the company, was in pursuance of a proved understanding that the rights of the parties should be fixed by a subsequent written contract; it might be conceded that in the absence of this distinct condition the company would have been entitled to an implied license, a shop right  *  *  *."  *Hazen Manufacturing Co. v. Wareham* (CCA-6), 242 Fed. 642, 648.  Respondent erred in disallowing the deduction of royalties.

If the disputed payments to the trust in 1943 were "contributions  *  *  *  paid by an employer to or under a stock bonus  *  *  *  plan," or pursuant to a "method of employer contributions" having "the effect of a stock bonus  *  *  *  plan," their deductibility is controlled exclusively by section 23 (p) (1).[3]  *Tavannes Watch Co.*, 10

---

[2] Thus, for each 1 per cent of total stock owned, Bailey with about 50 per cent of the total stock received only about .2 per cent of the total royalties in each contested year, whereas for each 1 per cent of total stock owned by them, the smaller stockholders, Estate of Frank R. McGee, Schulze, Bowland, Ferree, and Hopkins, with about 10 to .3 per cent of the total stock, in that order, received about 3, .8, 3, 2.5, and 15 per cent of the royalties, respectively, in 1942, and about 3, .9, 2. 8, and 5 per cent, respectively, in 1943.

[3] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions :

*  *  *  *  *  *  *

(p) CONTRIBUTIONS OF AN EMPLOYER TO AN EMPLOYEES' TRUST OR ANNUITY PLAN AND COMPENSATION UNDER A DEFERRED-PAYMENT PLAN.—

(1) GENERAL RULE.—If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan  *  *  *, such contributions  *  *  * shall not be deductible under subsection (a) but shall be deductible, if deductible under subsection (a) without regard to this subsection, under this subsection but only to the following extent :

*  *  *  *  *  *

(C) In the taxable year when paid, if the contributions are paid into a stock bonus or profit-sharing trust, and if such taxable year ends within or with a taxable year of the trust with respect to which the trust is exempt under section 165(a).  *  *  *

(D) In the taxable year when paid, if the plan is not one included in paragraphs (A), (B), or (C), if the employees' rights to or derived from such employer's contribution  *  *  *  are nonforfeitable at the time the contribution or compensation is paid.

*  *  *  *  *  *  *

If there is no plan but a method of employer contributions  *  *  *  has the effect of a stock bonus  *  *  *  plan,  *  *  *  this paragraph shall apply as if there were such a plan.

T. C. 544, 549, reversed (CA-2), 176 Fed. (2d) 211; *Times Publishing Co.*, 13 T. C. 329. Deduction under section 23 (a) (1) (A)[4] of payments to the same trust in 1942, antedating section 23 (p) as amended, were not disallowed. Cf. *Phillips H. Lord*, 1 T. C. 286, and *Gisholt Machine Co.*, 4 T. C. 699, with *Draper & Co.*, 5 T. C. 822.

We agree with petitioner that the plan under which it paid the amounts in question as insurance premiums "would be considered to be a stock bonus plan within the generally accepted meaning of that term." And the words of the statute are to be given their generally accepted meanings. But to warrant deduction, either the sums must have been "paid  *  *  *  into a trust  *  *  *  exempt under section 165 (a),"[5] section 23 (p) (1) (C); or "the employees' rights to or derived from such employer's contribution" must have been "nonforfeitable at the time the" payments were made. Section 23 (p) (1) (D).

Petitioner does not suggest that the payments "do not discriminate in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees," as required by section 165 (a). Cf. *Volckening, Inc.*, 13 T. C. 723. The opposite is obviously true. See *H. S. D. Co.* v. *Kavanagh* (Dist. Ct., Mich.), 88 Fed. Supp. 64, 69:

> Where, as here, it appears that an employer's stock bonus, pension and profit-sharing plan is not operated for the exclusive benefit of the employees, but as a mere subterfuge to build up the employer's capital reserves and to provide what are in effect benefits which discriminate in favor of executive officers who are shareholders,  *  *  *  contributions to such a plan are not exempt under Section 165 (a), Internal Revenue Code, so as to be deductible in the year paid under Section 23 (p) (1), (A) (B) (C), and (3), Internal Revenue Code.

As the case is presented, deductibility under section 23 (p) (1) (D) depends upon whether the "employees' rights" required by that section to be "nonforfeitable" at the time of payment refers to the rights of each named employee beneficiary or of all "employees" as a class. Under the agreement, rights of each named beneficiary terminated upon his "death, discharge, resignation, or retirement"; and petitioner could, as it chose, distribute "his proportion" of stock to the remaining original beneficiaries, to substituted employees, or, in case of death,

---

[4](a) EXPENSES.—

(1) TRADE OR BUSINESS EXPENSES.—

(A) In General.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business  *  *  *

[5] SEC. 165. EMPLOYEES' TRUSTS.

(a) EXEMPTION FROM TAX.—A trust forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall not be taxable under this supplement  *  *  *—

> (4) if the contributions or benefits provided under the plan do not discriminate in favor of employees who are officers, shareholders, persons whose principal duties consist in supervising the work of other employees, or highly compensated employees.

to the deceased employee's wife or children.   Under petitioner's theory, restriction of the benefits to "employees" as a class, or their families, would meet the nonforfeitability requirement of the statute.

However, *Times Publishing Co.*, *supra*, 333–4, indicates that "employees' rights" refers to the rights of specific beneficiaries:

* * *   the employees' rights to the payments must be nonforfeitable at the time the contributions or deferred compensation is paid.

* * * * * * *

* * *   *Since* * * *   *an employee was entitled to receive only the bare refund of his own contributions* in the event of death, termination of employment, or default in making payment * * *, the employees did not have a nonforfeitable right in petitioner's contributions. * * *   We hold, therefore, that the payments by petitioner are not an allowable deduction under section 23 (p).   [Emphasis added.]

In *H. S. D. Co.* v. *Kavanagh*, *supra*, 69, the Court found that

The rights of the employees under this plan were forfeitable at the time the taxpayer contributed thereto for the reason that the Employees' Trust agreement provided that when an employee, voluntarily or involuntarily, left his employment with the company for any reason, except cause * * *   he would receive 10% of the contributions standing to his account for each year of service, up to five years, and 5% * * *   for each year over five years, and 100% * * * only at or after ten years * * *.

Stressing the requirement that an individual beneficiary must have received rights to the contribution when made, the Court concluded, (p. 69) :

* * *   if not so exempt, [under section 165 (a)] such contributions are deductible in the year paid *only in the case of an employee whose* beneficial *interest* in such contribution *is nonforfeitable* at the time made.   Section 23 (p) (1) and (3) * * *.

* * * * * * *

5. Where, as here, an employer's contributions to a trust are not exempt under Section 165 (a), Internal Revenue Code, such contributions are not deductible by the employer in the year paid *where there is no employee whose beneficial interest in such contribution is nonforfeitable at the time the contribution is made* * * *.   [Emphasis added.]

See *Wooster Rubber Co.*, 14 T. C. 1192.

This result is consistent with the legislative plan that, in any year, "the contribution cannot be both nontaxable and deductible."   Eisenstein, "A Case of Deferred Compensation," 4 Tax L. Rev. 391, 416 (May 1949).   Under section 165 (c), an employer's contribution to a trust not exempt under section 165 (a) "shall be included in the gross income of an employee for the taxable year in which the contribution is made to the trust *in the case of an employee whose beneficial interest in such contribution is nonforfeitable* at the time the contribution is

made." [Emphasis added.] See *George Von Hoffmann*, 10 T. C. 314, 317; section 22 (b) (2) (B).[6]

Respondent's disallowance of premium payments to the trust is sustained.

Accrual of the Paulsen Co. charge in 1943 was proper because by entering the amount on its books in the same year the invoice was received petitioner effectively demonstrated its contemporaneous acceptance of the bill as a fixed obligation. *Associated Gas & Electric Co.*, 2 B. T. A. 263, 265. That petitioner continued to consider the Paulsen Co. bill as an unconditional liability, not contingent upon settlement through Defense Plant Corporation, is illustrated by its payment several months prior to any reimbursement.

But nothing occurred in 1943 to warrant accrual of the Green Co. bill in that year, and petitioner's failure to treat it as a liability in 1942, when invoiced, puts it on no more favorable footing than the Pittsburgh Co. charge as to which accrual in neither year is claimed. Respondent's disallowance of the Green Co. bill as a proper accrual in either 1942 or 1943 is therefore sustained.

Our ultimate findings for each year of petitioner's net abnormal income from its blast furnace specialties, and of the appropriate business improvement factors, dispose of the only questions raised by the section 721 issue. Since no contention is made for other adjustments, cf. *Ramsey Accessories Manufacturing Corp.*, 10 T. C. 482, *Rochester Butter Co.*, 7 T. C. 529, the net abnormal income attributable to prior years can be computed under Rule 50 by applying the business improvement factors to net abnormal income.

Because the parties have stipulated the amounts of net abnormal income, we have only the narrow question whether, for each product, petitioner in prior years conducted "research, or development of tangible property, patents, formulae, or processes, or any combination of the foregoing, extending over a period of more than 12 months."

---

[6] SEC. 22. GROSS INCOME.

\*        \*        \*        \*        \*        \*        \*

(b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

\*        \*        \*        \*        \*        \*        \*

(2) ANNUITIES, ETC.—

\*        \*        \*        \*        \*        \*        \*

(B) Employees' Annuities.—If an annuity contract is purchased by an employer for an employee under a plan with respect to which the employer's contribution is deductible under section 23 (p) (1) (B), or if an annuity contract is purchased for an employee by an employer exempt under section 101 (6), the employee shall include in his income "the amounts received under such contract for the year received \* \* \*. In all other cases, *if the employee's rights* under the contract *are nonforfeitable* except for failure to pay future premiums, *the amount contributed* by the employer \* \* \* ·on or after such rights become nonforfeitable *shall be included in the income of the employee in the year in which* the amount is *contributed* \* \* \*. [Emphasis added.]

Section 721 (a) (2) (C), Internal Revenue Code.[7]   With respect to all products except the cinder notch stopper, steel stove bottom, and pig casting machine, proof of the requisite research for at least 12 months is adequate, and our findings have been made accordingly. See *W. B. Davis & Son, Inc., supra,* 1195.

The remaining question concerns the choice of an appropriate index to reflect the portion of net abnormal income due not to research and development but to improved business conditions.   *W. B. Knight Machinery Co.,* 6 T. C. 519, 534; Regulations 112, section 35.721–3. We have chosen the factors for pig iron production.   While not themselves pig iron, each of the products in question was employed exclusively in operation of blast furnaces for the production of pig iron. An increased demand for the iron therefore inevitably accounted for some portion of petitioner's increased sales.   It is not shown that application of different business improvement factors would change the result. . See *Rochester Button Co., supra,* 554.

Reviewed as to Section 721 (a) (2) (C) by the Special Division.

*Decision will be entered under Rule 50.*

---

[7] SEC. 721.   ABNORMALITIES IN INCOME IN TAXABLE PERIOD.

(a) DEFINITIONS.—For the purposes of this section—

(1) ABNORMAL INCOME.—The term "abnormal income" means income of any class includible in the gross income of the taxpayer for any taxable year under this subchapter if it is abnormal for the taxpayer to derive income of such class, or, if the taxpayer normally derives income of such class but the amount of such income of such class includible in the gross income of the taxable year is in excess of 125 per centum of the average amount of the gross income of the same class for the four previous taxable years, or, if the taxpayer was not in existence for four previous taxable years, the taxable years during which the taxpayer was in existence.

(2) SEPARATE CLASSES OF INCOME.—Each of the following subparagraphs shall be held to describe a separate class of income :

•     •     •     •     •     •     •

(C) Income resulting from exploration, discovery, prospecting, research, or development of tangible property, patents, formulae, or processes, or any combination of the foregoing, extending over a period of more than 12 months. • • •