ROSE PACKING COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 57315. Filed August 26, 1957.

*James J. Costello, Jr., Esq.*, for the petitioner.
*J. Bruce Donaldson, Esq.*, for the respondent.

### OPINION.

FORRESTER, *Judge:* Respondent has determined a deficiency in petitioner's income tax for the taxable year 1950 in the amount of $1,961.94. Petitioner challenges the entire deficiency so determined, and claims an overpayment in the amount of $2,559.30. The sole issue is whether a certain payment by petitioner in 1950 in the amount of $11,110.51 is deductible in full as claimed by petitioner or, as determined by respondent, is deductible to the extent of one-tenth

thereof in 1950 in accordance with the provisions of section 23 (p) (1) (A) of the Internal Revenue Code of 1939.[1]

All of the facts have been stipulated and are found accordingly.

Petitioner is a corporation with its principal office in Chicago, Illinois. It filed its corporation income tax return for the calendar year 1950 on an accrual basis with the then collector of internal revenue for the first district of Illinois.

Effective January 1, 1943, petitioner established an employees' pension plan and trust. The plan and trust met the requirements of section 165 (a) of the Internal Revenue Code of 1939, and qualified as exempt under that section at all times during its existence.

An amendment to the foregoing plan and trust on November 8, 1949, disqualified hourly paid employees from earning further benefits for services rendered after 1949. As a result, the existing rights of those employees became vested and nonforfeitable, and consisted of the right to receive the retirement income or annuity policies purchased, or which should have been purchased for their benefit, or the cash value thereof.

On December 5, 1951, the plan and trust were terminated. Neither the termination nor the amendment affected the status of the plan under section 165 (a).

Petitioner was required to make contributions in order to fund benefits payable. An employee's benefits were computed by a formula which took into account his basic compensation. Increases in compensation would tend to be reflected by increased benefits, necessitating greater contributions by petitioner. The trustees were required to use petitioner's contributions to purchase individual retirement income or annuity policies for covered employees. The trustees were to be absolute owners of the policies, but benefits thereunder were stated to be payable directly to the employees or their beneficiaries.

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(p) CONTRIBUTIONS OF AN EMPLOYER TO AN EMPLOYEES' TRUST OR ANNUITY PLAN AND COMPENSATION UNDER A DEFERRED-PAYMENT PLAN.—

(1) GENERAL RULE.—If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under subsection (a) but shall be deductible, if deductible under subsection (a) without regard to this subsection, under this subsection but only to the following extent:

(A) In the taxable year when paid, if the contributions are paid into a pension trust, and if such taxable year ends within or with a taxable year of the trust for which the trust is exempt under section 165 (a), in an amount determined as follows:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(iii) In lieu of the amounts allowable under (i) and (ii) above, an amount equal to the normal cost of the plan, as determined under regulations prescribed by the Commissioner with the approval of the Secretary, plus, if past service or other supplementary pension or annuity credits are provided by the plan, an amount not in excess of 10 per centum of the cost which would be required to completely fund or purchase such pension or annuity credits as of the date when they are included in the plan, &ast; &ast; &ast;

Through oversight, petitioner neglected for 1943 to 1949, inclusive, to increase its contributions to account for increases in compensation, including increases in compensation of hourly paid employees. It was informed of this omission by the Internal Revenue Service (the then Bureau of Internal Revenue) late in 1949. Petitioner thereafter diligently undertook to compute the amount in default, but did not complete its computations until early in 1950. It was determined that if increased contributions had been made as required, the aggregate cash values of the policies covering hourly paid employees would be greater by $11,110.51.

On March 28, 1950, petitioner paid to the trustees the sum of $11,-110.51 on behalf of the hourly paid employees. As already noted, by virtue of the 1949 amendment such employees could not earn any further benefits, but rights already earned had become fixed and nonforfeitable, and consisted of the right to the policies which had or should have been purchased for their benefit, or the cash value thereof. During 1950, petitioner paid a total of $19,443.04 to the trust, including the foregoing amount of $11,110.51.

The payment of $11,110.51 on behalf of hourly paid employees was deposited by the trustees in the general bank account maintained for the deposit and withdrawal of all receipts and disbursements and the maintenance of excess moneys. On the same day the trustees issued a check drawn on that account to each hourly paid employee affected, in an aggregate amount of $11,110.51. At or about the same time the trustees delivered to each such employee a check issued by the insurance company in the amount of the cash value of the policy purchased for him by the trust.

Respondent has determined that the foregoing payment of $19,443.04 is subject to the provisions of section 23 (p) (1) (A) of the Internal Revenue Code of 1939, and that, accordingly, only 10 per cent of the amount of $11,110.51 paid on account of the benefits due the hourly paid employees is deductible in 1950. Petitioner contends that section 23 (p) (1) (A) applies only to that part of the payment attributable to non-hourly-paid employees, and that the amount of $11,110.51 paid on behalf of hourly paid employees is fully deductible under section 23 (p) (1) (D) [2] of the Code, or, in the alternative, under section

---

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(p) CONTRIBUTION OF AN EMPLOYER TO AN EMPLOYEES' TRUST OR ANNUITY PLAN AND COMPENSATION UNDER A DEFERRED-PAYMENT PLAN.—

\* \* \* \* \* \* \*

(D) In the taxable year when paid, if the plan is not one included in paragraphs (A), (B), or (C), if the employees' rights to or derived from such employer's contribution or such compensation are nonforfeitable at the time the contribution or compensation is paid.

23 (a) (1) (A) [3] thereof. Petitioner has stipulated however that in the event the Court determines that its deduction for all payments to the pension trust in 1950 is controlled by section 23 (p) (1) (A), that respondent correctly determined its tax liability for that year.

The first sentence of section 23 (p) makes it clear that if that section applies it does so to the exclusion of section 23 (a). *William M. Bailey Co.*, 15 T. C. 468, 485, affd. 192 F. 2d 574; *Tavannes Watch Co.*, 10 T. C. 544, 548, reversed on other issues 176 F. 2d 211. And section 23 (p) (1) (D) is a catchall provision, expressly excluded from matters falling within the scope of, *inter alia*, section 23 (p) (1) (A). Thus, in determining whether subparagraph (A) or (D) controls we must first determine whether section 23 (p) itself applies. An affirmative answer will necessarily exclude section 23 (a), so, in effect, we must first answer petitioner's alternative contention.

Section 23 (p) applies to "contributions * * * paid by an employer to or under a * * * pension * * * plan." We cannot but be convinced that the payment in question falls within the plain scope of the foregoing language. We do not agree with petitioner that the 1949 amendment had the effect of terminating the plan as to hourly paid employees.

It is true that such employees could earn no further benefits, but they had become vested with respect to benefits already earned. It remained the duty of the trustees to protect their rights, and to pay them whatever benefits they had the right to receive. The pension plan and trust were still very much in existence for them, and the payment in question was, if anything, a contribution by an employer to or under a pension plan. It was made because certain benefits were due them, in accordance with the terms of the plan as amended, and was in the precise amount necessary to bring the benefits to be paid them up to the required amount. We do not have the 1949 amendment before us, and the available facts do not justify petitioner's contention that its effect was to transform the payment of $11,110.51 into something other than a contribution by an employer to or under a pension plan.

A complex contract adhered to by both parties over a long period of time cannot be said to have been fully performed because payment by one of the parties is now all that remains to be done under its terms. When the required payment is made it is being made because of the contract and therefore under it.

---

[3] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(a) EXPENSES.—

(1) TRADE OR BUSINESS EXPENSES.—

(A) In General.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *

We hold that the payment in question is deductible only in accordance with the provisions of section 23 (p) of the Internal Revenue Code of 1939.

We must now determine whether the applicable provision is subparagraph (A) or (D) of section 23 (p) (1). As above noted, subparagraph (D) can apply only in default of application of, *inter alia*, subparagraph (A). There is no claim that any provision within section 23 (p) other than the foregoing can govern, or that any other requirement of subparagraph (D) has not been met, so resolution of the instant controversy depends solely upon the applicability of subparagraph (A). We have reached the conclusion that it does indeed apply.

Having already determined that section 23 (p) governs the deduction in question, two additional conditions must be met in order that section 23 (p) (1) (A) apply, as follows:

1. The contribution must be paid into a pension trust.

2. The taxable year of the employer must end with or within a taxable year of the trust for which it is exempt under section 165 (a).

According to the stipulated facts the trust was exempt under section 165 (a) at all times during its existence. Hence, petitioner's taxable year 1950 must necessarily have ended with or within a taxable year of the trust for which it was exempt; thus, the second requirement of section 23 (p) (1) (A) appears to be satisfied.

The controversy apparently centers around the requirement that the contribution be paid into a pension trust. This would clearly appear to have been done here, but petitioner argues that four factual distinctions between the payment of $11,110.51 and the balance of the amount contributed in 1950 prevent the application of section 23 (p) (1) (A). These distinctions are as follows:

1. The contribution of $11,110.51 was made on behalf of employees with respect to whom the trust had by then ceased to exist, and who could not participate in 1950 contributions.

2. The amount in question was the deficiency in cash values of the policy contracts rather than any net premium cost.

3. The trustees did not use the contribution to purchase policy contracts, as required by the terms of the trust.

4. The amount so contributed was disbursed to the hourly paid employees by the trustees rather than directly by the insurer, as required by the terms of the trust.

The first point has already been answered in demonstrating the inapplicability of section 23 (a). The trust did not end for hourly paid employees solely by virtue of the adoption of the 1949 amendment, and such employees could (and did) participate in 1950 contributions, to the extent that such contributions were in payment for benefits to which they were entitled.

While petitioner's first purported distinction exaggerates the effect of the 1949 amendment, the second such distinction overlooks that effect. The hourly paid employees were by that amendment vested indefeasibly with the right to receive the policies or their cash values. Furthermore, the value of such benefits was required to equal a certain dollar amount, which would be their value had petitioner fully and timely performed its commitments in the past. A deficiency existed only because, through inadvertence, petitioner had failed to do so. The payment in the amount of $11,110.51 brought to the proper level the value of the benefits payable to the hourly paid employees. This payment, even if not literally in accord with the trust as originally drawn, was in accord with the requirements of the trust as amended, that the hourly paid employees receive certain policies or the cash value thereof, in an ascertainable dollar amount. We find no merit in this purported distinction.

The third and fourth factors cited by petitioner are answerable together. Applicability of section 23 (p) (1) (A) is determinable at the time the contribution is made, and cannot hang suspended pending later events. Cf. *Philadelphia Suburban Transp. Co.* v. *Smith*, (E. D., Pa.) 105 F. Supp. 650, 655. The express language of the statute compels this conclusion, as well as elementary principles of law.

In *George W. Perkins*, 27 T. C. 601, the issue was whether present interests had been conveyed by the creation of certain trusts, so as to qualify for the annual gift tax exclusions of $3,000 per donee. The controlling factor was whether the beneficiaries had received a present right to enjoy the principal.

The express terms of the trusts purported to give to each beneficiary, or his parent or guardian, the unlimited right to demand and receive all or part of the corpus. The beneficiaries themselves were minors incapable of making effective demand. Only with respect to one beneficiary had a guardian been appointed, and even in that instance, some time after the creation of his trust. However, the parents of the beneficiaries were competent adults and could effectively exercise any powers held by them.

It was apparent from other trust provisions and various circumstances surrounding the transactions that the settlors did not expect any actual exercise of a power of invasion to take place, at least in the foreseeable future, and in fact thought that such exercise would be unwise. The parents of the beneficiaries were capable of supporting their children, and there was no foreseeable need of principal. No exercise of any power to invade principal had as yet occurred by the time of the hearing, several years after creation of the trusts. In holding the gifts to have been of present interests, notwithstanding the foregoing, we said at pages 605–606 :

We agree with respondent that the circumstances surrounding the creation of the trusts and the making of the gifts are relevant factors, to be considered along with the trust instruments themselves. However, we cannot find from such facts that the gifts were not indeed of present interests. It is admitted that petitioners expected that the power given to the parents of the beneficiaries would not be exercised, at least in the absence of a substantial change of circumstances, and this expectation has apparently proved justified. The parents were and have continued to be financially able to support their children without recourse to trust income or principal. Nonetheless, they have continuously had the right to make such demand since the time the gifts were made. *The existence or nonexistence of that right at the relevant time must determine the nature of the gifts, not the subsequent conduct of the parents in choosing whether or not to exercise it.* \* \* \* [Emphasis added.]

The payment in question here cannot, absent special statutory provision, be one thing when made, and then, because of later events and the actions of others, be something different. Of course, subsequent events may well have probative value in proving the nature of the earlier transaction, but neither of the events relied upon by petitioner shows the payment in question, when made, to have been other than a contribution into a pension trust.

In any event, the exact terms of the 1949 amendment are not before us, and petitioner has not proved that a material deviation from the terms of the trust as amended occurred.

We conclude that the payment in the amount of $11,110.51, made by the petitioner to the trustees on March 28, 1950, constituted payment into a pension trust. Deductibility of such contribution is subject to the limitations contained in section 23 (p) (1) (A) of the Internal Revenue Code of 1939. Respondent did not err in his determination of a deficiency.

*Decision will be entered for the respondent.*

